# CASES

## ARGUED AND DETERMINED

### IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS

---

### MUTUAL LIFE INS. CO. OF NEW YORK v. SMITH.

#### (Circuit Court of Appeals, First Circuit. January 13, 1911.)

#### No. 877.

**1. ANNUITIES (§ 1*)—NATURE OF POLICY—PUBLIC POLICY.**

A deferred annuity contract issued by an insurance company, by which it contracted to pay the annuitant $1,000 yearly commencing at a fixed period in the future, provided the annuitant should be then alive, the payments to continue thereafter as long as he lived, was not invalid as contrary to public policy.

[Ed. Note.—For other cases, see Annuities, Cent. Dig. §§ 1–6; Dec. Dig. § 1.*]

**2. BANKRUPTCY (§ 178*)—TRUSTEES—PROPERTY FRAUDULENTLY CONVEYED—ANNUITY—CANCELLATION—RECOVERY OF CONSIDERATION.**

A bankrupt, having obtained money by a fraudulent transaction with others, purchased therewith certain deferred annuity contracts from defendant insurance company, by which the company obligated itself to pay the bankrupt $1,000 yearly under each contract, commencing at a future date, provided the bankrupt was then alive, payments thereafter to continue as long as the bankrupt lived; the insurance company having no notice that these contracts were purchased with money which the bankrupt had fraudulently obtained. *Held*, that since the insurance company was entitled to the benefit of the contracts so far as they were advantageous to it, and could not be placed in statu quo by cancellation thereof, the bankrupt's trustee was not entitled to recover the money so fraudulently paid therefor and to have the contracts canceled, but was only entitled to the benefit of whatever sum he might realize on a sale of the bankrupt's contingent interest therein.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 264–274; Dec. Dig. § 178.*]

Appeal from the Circuit Court of the United States for the District of Massachusetts.

Suit by Jeremiah Smith, Jr., as trustee in bankruptcy of one Dunning, against the Mutual Life Insurance Company of New York and others, to recover, as assets disposed of in fraud of creditors, premiums paid by the bankrupt for deferred annuity contracts. From a decree

for complainant (178 Fed. 510), the insurance company appeals. Reversed.

William D. Turner (Reginald Foster and Stephen S. Fitz Gerald, on the brief), for appellant.

Stanley R. Miller (Fish, Richardson, Herrick & Neave, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. This is a bill in equity by a trustee in bankruptcy, who offers to surrender certain insurance contracts entered into between the bankrupt and an insurance company, and asks that the company be ordered to pay to the trustee upon their surrender all sums which the company received from the bankrupt.

The case is a novel one in the sense that it involves a kind of insurance or indemnity which has not been in general use, if in use at all.

One Edwin J. Dunning, who was insolvent at the time, secured from the Mutual Life Insurance Company of New York three policies, which are designated by the appellee, and perhaps correctly, as "deferred annuity contracts," whereby the company obligated itself to pay to Dunning $1,000 yearly under each contract or policy, commencing in 1916, 1921, and 1926, respectively, provided Dunning was then alive, and the payments were to continue as long as Dunning should live.

The total amount paid by Dunning for these policies or contracts was $4,920. There were three payments—one in January, another in February, and another in July, 1901.

There is no substantial argument against the general proposition that Dunning was insolvent, and that he was acting in general bad faith with respect to his creditors, and that he was scheming to get money by fraudulent means from the Brooks family, and perhaps others, which he never intended to pay; and we think the record discloses a condition of things from which it should be assumed that at a time at least as early as the date of the policies Dunning was engaged in transactions of a hazardous and fraudulent character, whereby he was to secure financial advantages and securities for which he never intended to pay; but we are not aware that the proofs establish any precise fact connecting any particular fraudulent transaction under which he was to receive money with the particular transaction of securing the deferred annuities or insurance. It is, however, probably quite true that the policies were paid for with money which he fraudulently obtained.

It is neither alleged nor argued that the insurance company had any knowledge of Dunning's fraudulent career, and it is admitted that the company acted in good faith and without having any ground to suspect the existence of any fraudulent intent on Dunning's part.

The position of the trustee in bankruptcy is that Dunning's payments were transfers in fraud of creditors, and that the insurance company, though acting bona fide, is not a purchaser for value, because it has not paid the purchase money, or secured it in such a manner that it cannot be relieved against payment.

In support of this position counsel rely upon that class of cases which are concerned with transactions between seller and purchaser, and transactions between grantors and grantees with respect to which it has sometimes, and perhaps generally, been held that the execution and delivery of nonnegotiable notes and bonds, and other things done by the purchaser or grantee less than actual payment before notice, do not constitute one a bona fide purchaser or grantee, and therefore that the creditors may have property restored to them where the purchaser or grantee may be placed in statu quo.

There is, of course, some diversity of authority in respect to the particular circumstances under which rescission and restoration is justifiable; but in our view we are not called upon to consider the large number of cases relating to such situations, because they have no direct application to the question involved in this case, and have very little bearing, if any, by way of analogy.

If we are right in this position, it is because the relations here are not those of seller and buyer, and because the insurance company was in no sense a purchaser. The fundamental idea of the remedy for restoration is that it directs itself against the purchaser, and if either of the parties to the insurance contract in question could be considered a purchaser it would be Dunning, while the remedy is sought against the insurance company.

The courts are, of course, reluctant to give any aid whatever to parties tainted with fraud; but this is not a case between the trustee in bankruptcy and Dunning, but between the trustee and the insurance company, against whom there is no suggestion of fraud, and is therefore a case where the rights between these particular parties do not depend so much upon the bad faith and the wrongful intent of Dunning, who is one of the parties to the contract, as upon the good faith and innocent intent of the insurance company, who is the other party to the contract.

As stated at the outset, the contract between the insurance company and Dunning, or the policy of insurance from the company to Dunning, if it may properly be called that, is novel in kind; but that is no reason why it should be rescinded by the parties or repudiated by the law, provided it does not offend the law or general considerations of public policy.

All insurance was once new, and insurance in its early stages covered few contingencies; but the business under the law has grown until the idea of insurance now spreads itself broadly over many subjects and many contingencies.

Generally speaking the contingency, so far as contingency is concerned, in life insurance, is death, with, of course, endowment plans, under which there is payment of a certain sum at a particular age.

The policies in question provide for payments of annuities beginning in 1916, if the insured is alive at that time, and for the continuance of annuities during his life.

Aside from what is urged in respect to the fraudulent purpose of Dunning to secure this insurance and pay for it by funds which were realized out of fraudulent transactions, and which, if used for such a purpose, would divert funds which equitably belonged to creditors,

we see very little to be urged against insurance of the nature in question, and, indeed, that does not go to the merit of the insurance itself. It is not unnatural that one should act upon the idea that, in the days when he is handling money, it is the part of wisdom to safeguard the period of old age, in which business and earning capacity will have become a thing of the past. Under modern conditions in the various industries, as well as in business and in official life, men are influenced to enter upon a particular work by various old age safeguards which become operative at the end of a specified period of service.

We see nothing, therefore, in the contract itself, disassociated from the general fraudulent purpose of Dunning, which offends public policy or any particular principle of law. The question whether the contract of insurance is one which should be repudiated upon principles of law, or as something offending public policy, is a very pertinent one, because, if the contract is a lawful and proper one in kind, the insurance company, acting in good faith, as it did, acquired certain rights and advantages upon which it is entitled to stand.

It is urged by the company that the nature of the contract and the business acts in pursuance of it by the insurance company put it in a situation where it is not possible to place it in statu quo.

It is suggested that brokers' commissions were paid, that the costs of doing business are an element, that the fund had been classified and entered upon its books, and had assumed a certain status with respect to other contingencies, and that there is no offer in the bill to place the insurance company in statu quo in these respects. But, however that may be, we think the other ground, that it has acquired rights and advantages upon which it is entitled to stand, involves weightier considerations.

The business of a mutual insurance company is in a degree for profit as well as for security, and the enterprise involves large expenditures; and whether the margin is one way or the other depends upon whether the contingencies are well or ill-advised; and if there is nothing in the contract itself which offends the law, there is no reason apparent why the company, if it has acquired advantages or rights under a particular transaction, should be deprived of its advantages obtained in good faith.

If there were no question of creditors, and if Dunning had died a week after the contract and before bankruptcy, the contingency upon which the insurance was to become effective would have ceased to exist, or if he should die any time before 1916 such would be the case. That was the insurer's side of the contract, and the right, being created in good faith and without any purpose to defraud, it is difficult to find any principle upon which the advantage can be wrested from the insurance company by Dunning's creditors. Whatever advantage Dunning is to receive under the contract would doubtless go to the creditors.

The plaintiff, as trustee in bankruptcy, in his bill, offers to surrender the contract to the insurance company; but the insurance company says it is entitled to stand upon the contract entered into on its part in good faith, and under which it has acquired certain rights, and that it is willing that the trustee shall succeed to all the rights of the insured,

and take all the benefits which may result under the contingencies and terms of the contract.

The trustee's position in this respect is that a right which is only partially operative in 1916, and not wholly operative until 1926, is not an available and efficient beneficial right in the bankruptcy sense, because the law contemplates that matters concerning bankruptcy estates must be speedily adjusted and closed.

We do not perceive that to be a justifiable legal or equitable ground for dispossessing the insurance company of its legitimate contractual rights and advantages.

The contingent right of the insured, like the statutory right to seize and hold and sell remainder and contingent interests in real estate, is doubtless something that the trustee may seize and hold for the benefit of the creditors, or doubtless he may waive it altogether under circumstances which justify it.

The decree of the Circuit Court is reversed, and that court is directed to dismiss the bill without prejudice to any right the trustee may have to claim whatever beneficial interest the bankrupt has, or may hereafter have, under the insurance contracts described in the bill; and the respondent, now the appellant, recovers its costs of this court, and of the Circuit Court, so far as the same can be paid from the estate in bankruptcy