In re BURTIS.

(District Court, E. D. New York. June 9, 1911.)

BANKRUPTCY (§ 143*)—ASSETS—ANNUITY—RIGHTS OF TRUSTEE—STATUTES.

The bankrupt's husband bequeathed to her the income from a trust fund to be created by the executors to amount to $600 per annum in lieu of dower, etc. This the widow rejected, and settled her dower and other claims against the estate by an agreement with the other beneficiaries, by which they agreed to pay to her $300 a quarter so long as she remained a widow and unmarried, and $150 a quarter for life in case of remarriage. The annuity was paid to her until bankruptcy intervened. *Held*, that the widow's annuity was a right which she could assign and which could have been followed by creditors; and hence her trustee in bankruptcy was entitled to sell the bankrupt's right for its present value or collect 10 per cent. of the excess over $12 a week under Code Civ. Proc. § 1391, as amended by Laws 1908, c. 148, providing for a continuing execution against income from trust funds or profits to become due to a judgment debtor to the amount of $12 or more a week for the collection of 10 per cent. of such income.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*]

In the matter of bankruptcy proceedings of Fannie Betts Burtis. On petition to review a referee's determination as to the right of the trustee to an annuity belonging to the bankrupt.

William G. Phlippeau, for petitioner.
Oscar A. Lewis, for bankrupt.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CHATFIELD, District Judge. The bankrupt filed a voluntary petition on October 14, 1910, with schedules showing claims of less than $2,500, of which one for $469.76 is based upon a judgment docketed a few days previous to the bankruptcy petition.

The bankrupt is a widow, who by the will of her late husband, probated October 29, 1896, was given an income from a trust fund to be created by the executors, of $600 per annum, in lieu of dower and all claims against the estate.

This was rejected by the widow, who, on January 6, 1897, settled her dower and other claims against the estate upon the execution of an agreement secured by a mortgage on real estate for $24,000, by which agreement the heirs of the deceased husband undertook to pay to a trustee for the use of the widow $300 per quarter, so long as she remained a widow and unmarried, and $150 a quarter during her life in case of her remarriage.

These payments were made until 1907, when a partition suit of the mortgaged property caused the substitution and deposit of $24,000 in the place of said mortgage, as security for the payment of the annuity previously agreed upon.

The bankrupt claims the annuity to be "the right of a beneficiary of an express trust to receive rents and profits of real estate," and hence to be unassignable under section 103 of the real property law (chapter 52, Laws of 1909 of New York [Consol. Laws 1909, c. 50]), citing Lent v. Howard, 89 N. Y. 169; Cuthbert v. Chauvet, 136 N. Y. 326, 32 N. E. 1088, 18 L. R. A. 745, and other cases.

In order to meet the suggestion that under the agreement referred to the income provided for the bankrupt for life was to be the proceeds of a trust of personal property rather than real estate, the bankrupt calls attention to section 15, c. 45, Laws 1909 (Consol. Laws 1909, c. 41), making the right to compel the performance of a trust to apply income from personal property to the use of a person untransferable, and under this section cites Greer v. Chester, 62 Hun, 329, 17 N. Y. Supp. 238, affirmed 131 N. Y. 629, 30 N. E. 863, and Williams v. Thorn, 70 N. Y. 270, to the effect that an income of this nature cannot be applied to the payment of debts, unless it has been affirmatively shown that the income is more than sufficient for the fair support of the beneficiary or that there is a surplus.

It must be held that, whether or not such a trust in real estate as was created by the will referred to could have been assigned, the widow did have the right to assign her rights as widow if the trust were not actually carried into effect. Her dower rights would have been liable for her debts, and her statutory share in her husband's estate would also have been liable for the payment of her debts. It must follow, therefore, that when Mrs. Burtis refused to accept the beneficiary interest under the trust, and compelled the transfer to her of rights by which she received an income of $1,200 from certain individuals, the payment of which was secured by a mortgage, she did not rely upon an inalienable trust, but insisted and agreed upon receiving for her support the proceeds of a larger amount of property

than would have been secured to her, beyond the power of attack by her creditors, under the provisions of the will.

It would also follow, therefore, that the income to be paid by these individuals to Mrs. Burtis and secured first by a mortgage and then by the deposit of money with the Hamilton Trust Company, can be reached by creditors of Mrs. Burtis to the same extent (and no more) that any such income or annuity could have been followed up by her creditors, if she had created the trust fund herself from cash paid to her in release of her dower rights. The income is an annuity and not a trust of realty or personalty.

Her creditors, under the cases previously cited, and under such authorities as Wetmore v. Wetmore, 149 N. Y. 520, 44 N. E. 169, 33 L. R. A. 708, 52 Am. St. Rep. 752, and Mills v. Husson. 140 N. Y. 99, 35 N. E. 422, might avail themselves of any rights which they can have against an income in the form of an annuity purchased by the annuitant herself.

It has been held in the case of In re Tiffany (D. C.) 133 Fed. 799, that a trustee in bankruptcy may bring a suit in equity to obtain the surplus of income from a trust fund. if that income be more than sufficient for the support of the bankrupt. Section 1391 of the Code of Civil Procedure of New York, as amended by chapter 148 of the Laws of 1908, provides for the levying of a continuing execution against wages, debt, earnings, salary, income from trust funds, or profits, to thereafter become due to a judgment debtor to the amount of $12 or more a week, and for the collection of 10 per cent. of such income under the continuing execution.

Inasmuch as it has been held herein that the quarterly payment to the bankrupt is not paid from the proceeds of a trust fund, it would not seem to come within the provisions of section 1391 unless the annuity be considered as a contract debt coming due and owing to the bankrupt quarterly as long as she shall live.

It is apparent that $1,200 per annum is more than $12 a week, and it also appears from the record that the judgment creditor, inasmuch as his judgment was obtained within less than four months prior to the filing of petition, cannot maintain his lien upon the fund against the general creditors. Hence the trustee in bankruptcy, if execution be levied and any collection made, would be entitled to the proceeds of the levy, that is, 10 per cent. of the debt or of the income, if it be an income of that nature, until the judgment be paid. On the other hand, the trustee in bankruptcy might proceed in equity against the annuity or income, if he has no remedy at law; but it would seem that neither the garnishee proceeding nor the bill in equity is necessary. The bankrupt has purchased for herself the right to receive a certain sum of money at regular intervals. The consideration for this was the relinquishment of rights in her deceased husband's estate. The amount of money deposited as security does not form in any way a part of the consideration for the annuity, and the annuity is the property of the bankrupt just as much as if she had paid a certain amount in cash to an authorized company and purchased there-

188 F.—34

with an out-and-out annuity, which would be subject at any time to levy and sale for the payment of debts.

In the present instance the trustee has the right to sell the property which the bankrupt had capable of transfer and not exempt from levy upon the day of filing her petition, and a part of that property would be the present value, as of that date, of the future rights to the annuity or fixed payment which she had contracted for. Whether the trustee will attempt to collect 10 per cent. of the obligation from time to time by an application under the Code, or whether he will attempt to have sold at public auction the right to receive the annuity, cannot be determined upon this motion; but, so far as the bankrupt and the Hamilton Trust Company are concerned, the estate in bankruptcy is entitled to the interest of the bankrupt in this fund as of the date of the petition.