**In re KERN.**

No. 56917.

District Court, S. D. New York.

June 12, 1934.

Harry J. Moskowitz, of New York City, for trustee.

Benjamin H. Eicoff, of New York City, for bankrupt.

PATTERSON, District Judge.

██ Kern filed a voluntary petition in bankruptcy on January 12, 1934, and was adjudicated bankrupt on the same day. On April 6, 1934, he brought a petition for the return of five policies of life insurance in possession of the trustee in bankruptcy and for an adjudication that the trustee had no interest in the disability benefits under the policies.[1] Only one of these policies was payable to the bankrupt's estate on death, and that policy had no cash surrender value. The beneficiaries of the other four policies were persons other than the bankrupt, and no interest in them passed to the trustee so far as death benefits or cash surrender value are concerned. It is conceded, therefore, that the trustee had no interest in the life insurance feature in any of the five policies. Burlingham v. Crouse, 228 U. S. 459, 33 S. Ct. 564, 57 L. Ed. 920, 46 L. R. A. (N. S.) 148; In re Messinger, 29 F.(2d) 158, 68 A. L. R. 1205 (C. C. A. 2), certiorari denied Reilly v. Messinger, 279 U. S. 855, 49 S. Ct. 351, 73 L. Ed. 996. But these five policies carried disability benefits in favor of the bankrupt. Each policy provided in substance that, on total and permanent disability of the bankrupt under the age of sixty, further premium payments would be waived and the company would pay to the insured a disability annuity for life or during continuance of the disability. In all the policies but one, this disability provision was made in consideration of the payment of a specified additional premium which could be dropped whenever the insured might prefer not to have the policy cover the contingency of disability.

It appears that about a year prior to bankruptcy the bankrupt made claim to the insurance companies that he was totally and permanently disabled, and that in the case of two policies disability benefits amounting to about $200 a month were paid commencing in May, 1933. Since bankruptcy, payments have been suspended because of the trustee's claim. Under two other policies disability claims have been made by the bankrupt, but the disability has not yet been acknowledged by the companies.

The question then is whether the benefits payable to an insured under disability benefit provisions in life insurance policies pass to the trustee in bankruptcy of the insured, the claim for such disability benefits having

matured prior to bankruptcy, where the trustee has no other interest in the policies. The referee ruled that the right to the disability benefits did not pass to the trustee.

██ 1. The first point for consideration is whether the local statute exempts from creditors' claims disability payments in favor of an insured. If it does, the trustee has no interest in such payments. Bankruptcy Act § 6 (11 USCA § 24); Holden v. Stratton, 198 U. S. 202, 25 S. Ct. 656, 49 L. Ed. 1018.

The only New York statute that is relevant is section 55-a of the Insurance Law (Consol. Laws, c. 28), providing: *"Rights of Creditors and Beneficiaries Under Policies of Life Insurance.* If a policy of insurance, whether heretofore or hereafter issued, is effected by any person on his own life or on another life, in favor of a person other than himself, or, except in cases of transfer with intent to defraud creditors, if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof, other than the insured or the person so effecting such insurance, or his executors or administrators, shall be entitled to its proceeds and avails against the creditors and representatives of the insured and of the person effecting the same, whether or not the right to change the beneficiary is reserved or permitted, and whether or not the policy is made payable to the person whose life is insured if the beneficiary or assignee shall predecease such person; provided, that, subject to the statute of limitations, the amount of any premiums for said insurance paid with intent to defraud creditors, with interest thereon, shall enure to their benefit from the proceeds of the policy; but the company issuing the policy shall be discharged of all liability thereon by payment of its proceeds in accordance with its terms, unless before such payment the company shall have written notice, by or in behalf of a creditor, of a claim to recover for transfer made or premiums paid with intent to defraud creditors, with specification of the amount claimed."

It is evident that this act does not touch the case of disability benefits in a life insurance contract in favor of the insured himself. The persons protected are beneficiaries "other than the insured or the person so effecting such insurance." In the Messinger Case, supra, the Circuit Court of Appeals held that

---

[1] The bankrupt's application covered six additional policies which did not carry disability benefits. The trustee had no interest under these policies and made no objection to their return.

the insured's right to cash surrender value was rendered exempt by the statute, but only because the exercise of such right would deprive the beneficiaries of their interest in violation of the statutory exemption. The court said (page 160 of 29 F.(2d): "It (the statute) does not protect the insured against his creditors, and only seeks to prevent them from affecting the rights of the beneficiaries other than himself."

The lower courts in New York have held that disability benefits payable to the insured under life insurance contracts may be reached by creditors of the insured, despite the provisions of this statute. The view has been taken, quite properly it would seem, that, while such benefits are "proceeds and avails" of the policy, they are in favor of the "insured or the person so effecting such insurance," and therefore expressly excluded from the exemption. Levy Leasing Co. v. Wishner, 147 Misc. 828, 265 N. Y. S. 184; Herbach v. Herbach, 148 Misc. 33, 265 N. Y. S. 144; Lion Credit Union v. Gutman, 148 Misc. 620, 265 N. Y. S. 479; but see Wittman v. Littlefield, 142 Misc. 916, 256 N. Y. S. 471, affirmed in 235 App. Div. 831, 257 N. Y. S. 885.

The conclusion that disability benefits are not within the scope of section 55-a is borne out by the fact that only last month the Legislature of New York enacted a new section 55-b, which exempts disability benefits from execution or other process by creditors. The new act (chapter 626, Laws of 1934, effective May 14, 1934) reads: *"Exemption of Disability Insurance from Execution.* No money or other benefit paid, provided or allowed or to be paid, provided or allowed by any stock or mutual life, health or casualty insurance corporation on account of the disability from injury or sickness of any insured person shall be liable to execution, attachment, garnishment, or other process, or to be seized, taken, appropriated or applied by any legal or equitable process or operation of law, to pay any debt or liability of such insured person whether such debt or liability was incurred before or after the commencement of such disability, but this section shall not affect the assignability of any such disability benefit otherwise assignable, nor shall this section apply to any money income disability benefit in an action to recover for necessaries contracted for after the commencement of the disability covered by the disability clause or contract allowing such money income benefit."

This legislation would be superfluous if disability payments under insurance policies were already exempt in New York.

It is reasonably clear then that at the time of bankruptcy judgment creditors of the bankrupt could have reached the disability benefits by proceedings supplementary to execution in the New York courts. This being the case, the right to the benefits passed to the trustee as "property which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him." Bankruptcy Act, § 70a (5), 11 USCA § 110 (a) (5).

■ 2. It is argued by the bankrupt that the case falls within the proviso to section 70a (5), relative to insurance policies: "* * * [Provided that] when any bankrupt shall have any insurance policy which has a cash surrender value payable to himself, his estate, or personal representatives, he may * * * pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets."

It is true that as to life insurance policies taken out by the bankrupt the trustee is entitled, by virtue of this proviso, to no more than the cash surrender value. Burlingham v. Crouse, supra. If the policy has no such value, the trustee gets nothing. But the Burlingham Case and those following it dealt only with life insurance. Here the policies combine two types of benefits. They embody a provision for life insurance and a provision for an annuity payable to the bankrupt on a contingency which has happened. The latter is not life insurance in any sense of the term; it more nearly resembles a health policy. It was held in Re Matschke (D. C.) 193 F. 284, in the Eastern District, that the proceeds of a disability policy which had matured prior to bankruptcy because of the disability of the bankrupt were assets passing to the trustee. It can make no difference that in the present case the contract for life insurance and the contract for disability benefits happened to be set forth in one and the same policy.

It cannot be said that, when Congress enacted the insurance proviso in 1898, it had disability benefits in mind as ordinary incidents of life insurance policies. It was not until much later that policies with this fea-

ture became common. See Disability Benefits in Life Insurance Policies, published by the Actuarial Society of America, 1932, pp. 2–6. There is nothing in the Bankruptcy Act that indicates an intention by Congress to withhold from the trustee disability payments contracted for by the bankrupt as part of a policy of insurance on his life.

3. The bankrupt contends finally that payments to be made after bankruptcy are in the nature of property acquired after bankruptcy, and therefore do not pass to the trustee. The position is untenable. Whatever the times of payment, the right of the bankrupt to payments under the policies had been acquired long prior to bankruptcy and was a vested right at the time of petition filed. In re Baudouine, 96 F. 536 (D. C. N. Y.); In re Wright, 157 F. 544, 18 L. R. A. (N. S.) 193 (C. C. A. 2); Fuller v. New York Fire Ins. Co., 184 Mass. 12, 67 N. E. 879.

The determination is that the disability payments under the policies are property which passed to the trustee in bankruptcy. The benefits by way of waiver of premiums otherwise due on the policies do not pass. The order of the referee will accordingly be reversed.