## LEGG *v.* ST. JOHN, TRUSTEE.

No. 54. Argued November 18, 1935.—Decided January 6, 1936.

*Messrs. Wm. Marshall Bullitt* and *Henry Roberts* for petitioner.

*Mr. Robert Burrow* and *Mr. Clayton Scyphers, pro hac vice,* for respondent.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The question for decision is whether the bankrupt or his trustee is the person entitled to future monthly disability benefits payable under a contract entered into before the adjudication.

On March 8, 1934, Legg, a resident of Tennessee, was, on his petition, adjudged a bankrupt. He then held a policy in the Metropolitan Life Insurance Company by which it agreed, in consideration of an annual premium of $425.83, to pay upon his death either $24,000 in 240 monthly installments or the single sum of $17,452, as commuted value. By a supplementary contract issued the same day and attached to the policy, the company, for an annual premium of $49.39, agreed, among other things, to pay a monthly benefit of $174.52, upon due proof that the insured had become totally and permanently disabled before the age of 60. By this provision, if Legg was "pre-

vented thereby from engaging in any occupation and performing any work for compensation or profit," the company undertook to:

"1. Waive the payment of each premium falling due under said Policy and this Supplementary Contract, and,

"2. Pay to the insured, or a person designated by him for the purpose, or if such disability is due to, or is accompanied by, mental incapacity, to the beneficiary of record under said Policy, a monthly income of $10 for each $1,000 of insurance, or of commuted value of instalments, if any, under said Policy."

Legg had become totally and permanently disabled several years before the adjudication. The company had treated its obligation as matured; had waived the payment of premiums on both the policy and the supplementary contract; and, until the adjudication, had paid to him monthly the disability benefits. The bankrupt asked to have the life insurance policy and also the future disability benefits payable under the supplementary contract exempted from the operation of the assignment to the trustee. The latter set aside as exempt the life insurance policy and its cash surrender value, but reported that the obligation of the company to make the benefit payments was an asset of the estate. The bankrupt excepted to the report in so far as it denied these to him. The referee ruled that the right to receive them vested in the bankrupt at the time of the adjudication; and that this right given by the supplementary contract is not insurance within the meaning of the laws granting exemptions. He accordingly overruled the exception of the bankrupt. But he directed that of the $174.52 payable monthly, the bankrupt should receive $40 as income exempt under the Tennessee law; and the trustee the balance, namely $134.52. The trustee acquiesced in the decision; the bankrupt sought review. The District Court confirmed the referee's order; and its judgment was affirmed

by the Circuit Court of Appeals. 76 F. (2d) 841. This Court granted certiorari, conflict in decisions being alleged. 295 U. S. 728.

The bankrupt contends that the "Supplementary Contract" covering disability is not a separate and distinct contract, but an integral part of the life insurance policy; that the obligation to pay disability benefits is insurance within the meaning of § 70 (a) of the Bankruptcy Act; that it did not pass to the trustee, since that feature has no cash surrender value; and that if it be held that the contract for disability benefits has a cash surrender value, its amount should be ascertained and the bankrupt be given the opportunity, by paying such value to the trustee, to hold the obligation free from the claims of creditors. The bankrupt contends further that any future disability payments are in the nature of future earnings or after-acquired property and, hence, do not pass to the trustee. Finally, he insists that the obligation of the company to pay disability benefits is property exempt under the law of Tennessee. All of these contentions are, in our opinion, unsound.

The applicable statutes are these:

The Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 544, 548, provides, in § 6, that it shall not affect the allowance of exemptions to the bankrupt prescribed by the laws of the State of his domicile; and in § 70 (a) that: " when any bankrupt shall have any insurance policy which has a surrender value payable to himself, his estate, or personal representatives, he may, within thirty days after the cash surrender value has been ascertained and stated to the trustee by the company issuing the same, pay or secure to the trustee the sum so ascertained and stated, and continue to hold, own, and carry such policy free from the claims of the creditors participating in the distribution of his estate under the bankruptcy proceedings, otherwise the policy shall pass to the trustee as assets. . . ."

The Tennessee Code (1932) provides:

" 8456. *Insurance on husband's life, effected by himself, goes to wife and children.*—Any life insurance effected by a husband on his own life shall, in case of his death, inure to the benefit of his widow and children; and the money thence arising shall be divided between them according to the statutes of distribution, without being in any manner subject to the debts of the husband.

" 8458. *Life insurance or annuity for or assigned to wife or children, or dependent relatives is exempt from claims of creditors.*—The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person made for the benefit of, or assigned to, the wife and/or children, or dependent relatives of such person, shall be exempt from all claims of the creditors of such person arising out of or based upon any obligation created after the effective date of this Code, whether or not the right to change the named beneficiary is reserved by or permitted to such person."

*First.* As Legg had become totally and permanently disabled before the adjudication, the company's obligation to make benefit payments monthly thereafter was property of the bankrupt which passed to the trustee, unless specially exempted by the law of Tennessee, or by § 70 (a) of the Bankruptcy Act. It was not exempted by § 70 (a), because the obligation to pay disability benefits is not " insurance " within the meaning of that section. The term "insurance" as there used referred only to legal reserve life insurance, the kind of insurance to which a cash surrender value was a common incident. For such value specific detailed provision is commonly made in life policies. Compare *Burlingham* v. *Crouse,* 228 U. S. 459; *Cohen* v. *Samuels,* 245 U. S. 50.[1] The effect of the pro-

---

[1] The Legg policy contained a table of cash surrender values. This related to the separate obligation to pay the face of the policy on death. It had no relation to the company's obligation under the " Supplementary Contract " for disability benefits.

494

vision in § 70 (a) is to assign to the trustee the cash surrender value of the life insurance policy. *Everett* v. *Judson,* 228 U. S. 474. No provision is made in the "Supplementary Contract" for a cash surrender value of the obligations thereby assumed; and none is provided by law or custom. Provision for the payment of disability benefits in connection with such life insurance was not introduced in the United States until about twenty years after the passage of the Bankruptcy Act.[2]

*Second.* The fact that the disability benefits are provided for in a "Supplementary Contract" issued on the same day as the policy and physically attached thereto does not make them life insurance. The life policy and the contract were executed as distinct instruments. The "Supplementary Contract" was to operate for some purposes as if a part of the life policy.[3] But for all other pur-

---

[2] Compare *In re Kern,* 8 F. Supp. 246. As early as 1910, some companies had inserted in their policies a provision that if the insured became "totally and permanently" disabled, payment of premiums would be waived so long as such disability continued. See *New York Life Insurance Co.* v. *Edwards,* 271 U. S. 109, 117, 118. A little later, some companies introduced the provision that in case of total and permanent disability the face of the policy would be paid in annual instalments beginning after the accrual of disability—the amounts so paid to correspondingly reduce the final amount of the policy payable at death, so that the entire liability under the policy could be extinguished even without death. Policies issued under the War Risk Insurance Act, October 6, 1917, c. 105, 40 Stat. 398, provide in addition to payments of (say) $10,000 on death, monthly benefit payments up to $57.50, the aggregate to be deducted from the face of the policy. It was not until about 1920 that provision was made for the payment, in consideration of an additional premium, of monthly disability benefits in addition to the full face of the policy at death. See Hunter and Phillips, "Disability Benefits in Life Insurance Policies," Actuarial Study No. 5 (2nd ed.) Part 1, ch. I (1932); Arthur Hunter, Papers on Disability Benefits, Eighth International Congress of Actuaries (1927), p. 83.

[3] It concludes: "The Supplementary Contract shall be deemed to be a part of the above numbered Policy and the provisions of said

poses it is a separate obligation. The hazards covered by the two instruments are obviously different. The beneficiaries differ also. The payment under the life policy was to be made to the wife; [4] the disability benefits are to be paid to Legg himself. A separate and different premium was exacted for the obligations assumed in each instrument. It was provided that forfeiture of the life policy would terminate all rights arising from disability; but the supplementary contract could be terminated by Legg without affecting otherwise his life policy.

*Third.* The obligation of the company to pay disability benefits in the future is not after-acquired property. It is property which was acquired by Legg long before the adjudication, and fully paid for by the premiums paid before the adjudication. Nor are the benefits payable after the adjudication in any sense future earnings. They are not the fruit of anything to be done by Legg after the adjudication. The right to receive disability benefits in the future does not differ from any other right acquired before adjudication to receive money thereafter. It is in essence an annuity purchased and paid for prior to the adjudication. Like other property, it passed to the trustee, unless exempted by the law of the bankrupt's

---

Policy concerning declarations and representations by the insured, restrictions, payment of premiums, change of beneficiary, and assignment, are hereby referred to and by such reference made a part hereof. No other provision of said Policy shall be held or deemed to be a part hereof, except (a) The provision of the said Policy as to incontestability shall apply hereto, but shall not preclude the Company from requiring as a condition to recovery hereunder, due proof of such total and permanent disability as entitles him to the benefits hereof. (b) The provision of said Policy as to reinstatement shall apply hereto, except that this Supplementary Contract shall not be reinstated unless said Policy is in force and no premium is in default thereon, or unless said Policy is reinstated at the time of reinstatement of this Supplementary Contract."

[4] Later, Legg changed the beneficiary to his children, reserving the right to change the beneficiary thereafter.

domicile.[5]   The principle declared in *Local Loan Co.* v. *Hunt,* 292 U. S. 234, is not applicable here.

*Fourth.* No statute of Tennessee exempts disability benefits. Its law is, in some respects, more liberal to the debtor than § 70 (a) of the Bankruptcy Act. Section 8456 provides that "any life insurance effected by a husband on his own life shall, in case of his death, inure to the benefit of his widow and children," free from claims of the husband's creditors. This has been held to mean that the cash surrender value, as well as the policy, is exempt.[6] But there obviously was no intention to 'exempt this contract right which is not life insurance, or "the money thence arising," since § 8456 is, in substance, a re-enactment of the statute passed in 1846. Section 8458, enacted in 1925, and slightly modified since, is not applicable here. It deals only with life insurance and annuity contracts "made for the benefit of, or assigned to, the wife and/or children, or dependent relatives." Even if a contract for future disability benefits be deemed an annuity within the meaning of that section, it does not apply, because this contract to pay disability benefits was not made for, and has not been assigned to, Legg's wife, his children, or any dependent. The highest court of Tennessee has not had occasion to decide whether future disability benefits are exempt from claims of creditors; but the intermediate appellate court has held that the statute exempting life insurance does not apply to disability benefits payable

---

[5] See *In re Wright,* 157 Fed. 544; *In re Burtis,* 188 Fed. 527; *In re Matschke,* 193 Fed. 284; *In re Evans,* 253 Fed. 276. Compare *In re Baudouine,* 96 Fed. 536; *Mutual Life Ins. Co.* v. *Smith,* 184 Fed. 1, 5; *In re Balsier,* 215 Fed. 134.

[6] See *Dawson* v. *National Life Ins. Co.,* 156 Tenn. 306; 300 S. W. 567; *In re Stansell,* 8 F. (2d) 363; Grade, Exemption of Life Insurance Policies Under Tennessee Statutes, etc., 11 Tenn. Law Rev. 34. Compare *Lunsford* v. *Nashville S. & L. Corp.,* 162 Tenn. 179; 35 S. W. (2d) 395.

under a so-called health-insurance policy. *Cravens* v. *Robbins,* 8 Tenn. App. 435, 437.

*Affirmed.*