**In Proceedings for a Wage Earner Plan Under Chapter XII.**

**In the Matter of Doris E. DYKES, Debtor.**

**No. 16280-B-2.**

United States District Court, D. Kansas.

Oct. 30, 1970.

John P. Schaefer, Wichita, Kan., for Bankrupt.

Royce E. Wallace, Wichita, Kan., Trustee.

## MEMORANDUM AND ORDER

THEIS, District Judge.

Wichita City Teachers Credit Union, one of the creditors of the debtor in the captioned cause, has petitioned this Court for review of an order previously entered by the Honorable Robert B. Morton, Referee in Bankruptcy. The effect of this order was to deny petitioner the status of a secured creditor as more fully·set forth below. The Court notes that the question is properly before the Court and that jurisdiction is present to resolve the issue.

Under Bankruptcy Gen.Order 47, 28 U.S.C.A., and the applicable decisions of the federal courts, the scope of review by this Court of a Referee's report and order is rather narrow. The Court is bound to accept the Referee's findings of fact unless they are clearly erroneous. Bankruptcy Gen.Order 47, 28 U.S.C.A.; See, e. g., Moran Bros., Inc. v. Yinger, 323 F.2d 699 (10th Cir. 1963); In the Matter of Hamill, 317 F. Supp. 909, July 15, 1970 (D.C.Kan.). In the present case there are no contentions that the facts as they were found to exist by the Referee are erroneous. The parties have agreed that the Referee correctly determined the salient facts. The case at bar presents solely a question of law. This being so, no presumption of correctness applies to the Referee's conclusions of law and the same cannot be approved without this Court's independent examination and determination of the law. Solomon v. Northwestern State Bank, 327 F.2d 720 (8th Cir. 1964); In the Matter of Hamill, supra. The facts are as follows:

1. The debtor was at all times material to this dispute employed as a school teacher by the Board of Education of Wichita, Kansas. From time to time the debtor borrowed certain sums from the petitioner, Wichita City Teachers Credit Union.

2. On March 17, 1969, the debtor borrowed $1,030.94 from the petitioner. The loan is evidenced by a promissory note fixing a maturity date of July 1, 1969.

3. At the time this note was executed, debtor also assigned certain of her wages to petitioner.

4. On June 23, 1969, the debtor instituted the present action under Chapter XIII of the Bankruptcy Act.

5. Debtor's employment and the payment of her wages are covered by a "Certified Instructor Policy No. 200," which provides, in Part 205.04(D) (1) thereof, that a teacher's salary shall be paid in twelve equal monthly installments commencing on October 1 of the contract year and continuing on the first of each succeeding month until paid in full. It is also provided that "if an instructor so elects," he shall receive any remaining installments due him at the same time he receives the tenth monthly installment, so long as the receipt of same would not constitute payment in advance for services yet to be performed.

6. Other provisions of the policy statement fix the contract year at 184 days, consisting of 180 teaching days and 4 non-teaching professional days, and provide that if an instructor fails to complete the contract obligation his salary shall be paid on the basis that the number of contract days worked bears to the total number of contract days in the contract year.

7. In accordance with the policy statement provisions expressed above, since she had completed her active teaching services for the school year, the debtor, pursuant to her election, would have been entitled to receive the balance of her yearly salary on July 1, 1969. This proceeding intervened and the earnings were submitted to the jurisdiction of the court. The petitioner timely filed a claim and continues to assert the position that it is secured to the extent of $1,030.-94, the face amount of the note, as well as the total of debtor's salary checks for July and August, 1969, by virtue of the March 17, 1969 salary assignment referred to above.

The Referee denied to the petitioner any lien or security interest in the summer wages because at the time the plan was filed by the debtor (June 23, 1969), under the provisions of the policy statement she did not have the right to elect to receive these wages. The Referee certified the question presented as this: "Under the stipulated facts, did the debtor's salary assignment create a lien on earnings of the debtor which did not become receivable until after her wage earner petition was filed?" After an independent examination of the law controlling the case at bar, this Court is compelled to answer the question as posed by the Referee in the affirmative.

■ The Referee correctly found, in his order of February 20, 1970, that an assignment of wages is ineffective as to post-petition earnings. Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); Matter of Holt, In Bankruptcy No. 1894–B–2 (D.C.Kan. 1960). The Referee also determined that since the debtor did not have the right to her summer checks at the time she filed her petition, that these were future earnings and hence under the court's control and not subject to petitioner's asserted lien.

The trustee takes the position that on June 23, 1969 (the date the petition was filed), the debtor, although she had completed the work she had contracted to do for her employer, was not entitled to receive the final monthly installments under the contract until July 1, 1969, and not then unless she specifically so elected under the terms of the policy statement.

The petitioner concedes that if the payment of the money was subject to a "contingency" occurring after the filing date, then the trustee would be entitled to the wages and petitioner's lien would not attach. However, petitioner asserts that there was no contingency and the only thing that had to occur was the passage of time for the debtor to be entitled to the money.

■ Although under the policy statement the debtor had to elect to receive the money or it would not be payable on

July 1, 1969, at the time the petition was filed, the debtor had an absolute right to the money—the time of payment was the only uncertainty. The basic concept of relief under Chapter XIII of the Act, and what the entire scheme of relief is predicated upon, is that the settlement of the wage earner's debts is to be made out of the future earnings or wages of the debtor. 10 Collier, Bankruptcy, § 2805 (14th Ed. 1967).

If this had been a straight bankruptcy proceeding, the Court would have little difficulty finding that the wages had already accrued and were assets subject to the trustee's control. Cf. Local Loan Co. v. Hunt, supra; In re Kuether, 203 F.Supp. 223 (D.C.Cal.1962). The parties have not cited any case authority which is squarely in point with the case at bar, and the Court's research reveals none. A helpful and controlling case, although not precisely in point, is Legg v. St. John, 296 U.S. 489, 56 S.Ct. 336, 80 L.Ed. 345 (1936). In that case the question was whether the bankrupt or his trustee was entitled to future monthly disability benefits payable under a contract entered into before adjudication. The case was a straight bankruptcy proceeding. Prior to being adjudicated a bankrupt, Legg had become disabled and was receiving benefits under a policy. He contended the payments under the policy were future earnings and that he was entitled to the future payments rather than the trustee. The Supreme Court disagreed and allowed the trustee to take the benefit payment as assets of his estate.

The case at bar involves the same issue, i. e., whether certain contractual payments are "future wages." Since this is a wage earner plan, a similar determination by this Court will have the converse effect, that is to say, it will deny the wages to the trustee and subject them to the petitioner's asserted lien.

In the Legg case, Mr. Justice Brandeis delivered the opinion of the Court, and it seems that the following language is determinative of the issues before this Court:

"Nor are the benefits payable after the adjudication in any sense future earnings. · They are not the fruit of anything to be done by Legg after the adjudication. The right to receive disability benefits in the future [wages, in the case at bar] does not differ from any other right acquired before adjudication to receive money thereafter. It is in essence an annuity purchased and paid for prior to the adjudication. Like other property, it passed to the trustee * * *." (Emphasis added).

■ In the instant case, the Court must conclude that if this would have been a straight bankruptcy, the trustee would have been entitled to the wages. Since it is the converse situation, where the trustee takes the future earnings of the debtor, the petitioner's claim must be allowed under the rationale of Legg. On June 23, 1969, the . date the petition was filed, the debtor had fully earned the money in question. As in the Legg case, it was not "the fruit of anything to be done" thereafter. Whether Dykes elected to receive the money on July 1, 1969, or did nothing and waited until later to receive it, she had already earned the same and was absolutely entitled thereto, and therefore her prior assignment was valid.

■ Additionally, while not necessary to disposition of the legal question before the Court, the Court thinks it can be logically said that by the pre-bankruptcy assignment of March 17, 1969, the bankrupt then made an effective election to receive for herself·or her assignee these wages at their earliest due date, i. e., when earned and payable under her contract of employment. The provision of Part 205.04, Section D, as previously quoted from the policy statement, can clearly be construed as placing no time requirement or designated date upon which the election of an instructor becomes exercisable, but rather plainly the

language contained therein places the earliest date he can collect the money due on wages earned as the due date of his tenth monthly installment. To reiterate, there is a difference between a contingency as to the legal right or entitlement to the money which could result in a divestment of such entitlement, and a due date on money. Time of payment alone is not a contingency. The wages were not "future" in the sense that they were subject to marshalling by the trustee for application under the plan.

One further area of comment would seem to be necessary in view of the trustee's and Referee's reliance upon the state and federal version of the Commodore cases, i. e., In the Matter of Commodore, 262 F.Supp. 30 (D.C.1966), and Commodore v. Armour & Co., 201 Kan. 412, 441 P.2d 815 (1968). The reasoning and result reached in each of those cases by my esteemed colleague, Chief Judge Stanley, of this Court, and by esteemed Justice Kaul, of the Kansas Supreme Court, was based on the facts and legal conclusion there that the separation pay of the employee was actually due upon a contingency, not absolutely earned and due the debtor on the date of bankruptcy, and was, in fact, future earnings or compensation. Both the facts, type of bankruptcy, and legal conclusions reached here as to the debtor's absolute right to payment, as well as the determination of a valid election by the prior assignment, distinguish this case from the *Commodore* cases.

In light of the foregoing, it is the determination of this Court that petitioner is entitled to assert its lien and should be given the status of a secured creditor under the plan. The order of the Referee is therefore set aside and the case is remanded to the Referee with the direction to afford the petitioner the status of a secured creditor under the plan to the extent of debtor's salary for July and August, 1969.

It is so ordered.