**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 25, 2012

No. 11-60007

Lyle W. Cayce
Clerk

F.W. SERVICES, INC. & SUBSIDIARIES,

Petitioner-Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

Appeal from the Decision of the United States Tax Court
27134-08

Before KING, JOLLY and WIENER, Circuit Judges.

PER CURIAM:[*]

Relying on 26 U.S.C. § 162(a) ("Section 162(a)"), Petitioner-Appellant F.W. Services, Inc. (the "Appellant") deducted $2,483,916 from its 2004 income tax return. Appellant had deposited that amount with an insurance company and identified that deposit as "insurance" on its tax return. Respondent-Appellee Commissioner of Internal Revenue (the "CIR") examined Appellant's 2004 tax return and issued a deficiency notice after determining that the deposit did not comprise deductible insurance premiums under § 162(a). Appellant filed a

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-60007

petition with the United States Tax Court (the "Tax Court"), challenging the CIR's notice of deficiency.  The Tax Court denied the petition, holding that the amounts deposited with the insurance company were not deductible as insurance premiums.  We affirm.

## I.  Facts and Proceedings

### A.  Facts[1]

Appellant is a temporary personnel agency based in Houston, Texas.  It purchased two insurance policies from American Home Assurance Company ("American Home"), each covering both workers compensation and employers liability.  Each policy stated that the "only agreements relating to this insurance are stated in this policy," and each required the insurer, American Home, to pay all valid claims, up to $1,000,000.  Each policy also contained a "loss reimbursement" endorsement that required Appellant to reimburse American Home up to $500,000 for each accident, disease, or claim.  American Home would not have issued the two insurance policies to Appellant unless it first made some arrangement acceptable to American Home to ensure Appellant's financial responsibility for its $500,000 reimbursement obligations.

To satisfy those prerequisites, Appellant entered into a contract with National Union Fire Insurance Company of Vermont ("National Union") which covered Appellant's reimbursement obligations ("Deductible Amounts") under the American Home policies.[2]  This contract required National Union to pay Appellant's first $3,900,000 of loss reimbursement under the American Home policies.  That amount was the aggregate limit of liability under the National Union contract, which required Appellant to pay National Union an *estimated* "premium" of $3,919,598 and clarified that "[t]he actual premium will be

---

[1] The parties stipulated the facts in the Tax Court.

[2] National Union and American Home are both subsidiaries of American International Group, Inc. ("AIG").

No. 11-60007

determined after this policy ends by using the actual, not the estimated, premium basis amount for the period of coverage and the rates set forth in Item 6 of the Declarations page." National Union's contract with Appellant succinctly explained the nature of the estimated premium: "If the final premium is more than the premium you have paid us, you must pay us the balance. If it is less, we will refund the balance to you."

An "Assignment of Return Premium" attached to the National Union contract stated that "if this policy is canceled, you hereby assign, and we will pay, any return premium to the insurer or insurers identified in Item 5 of the Declarations Page, to be held by them as collateral to secure your payment of deductible reimbursements under the policies identified in Item 5 of the Declarations Page." "Item 5" of the "Declarations Page" named only American Home.

Other means had been available to Appellant to collateralize its loss reimbursement obligation to American Home. Appellant nevertheless made "a financial decision" to acquire the National Union contract for that purpose.

At the end of 2004, $2,482,916 remained in the National Union loss fund for the payment of the American Home deductibles. In its federal income tax return for 2004, Appellant deducted from income the premium it had paid to American Home, as well as all payments it had made to National Union, as ordinary and necessary business expenses under § 162(a). The CIR issued a notice of deficiency to Appellant, asserting, among other things, that the amounts remaining in the National Union fund at the end of 2004 were not deductible under § 162(a) as insurance premiums. The CIR did, however, allow Appellant to deduct the aggregate amount of all claims actually paid by National Union to American Home in 2004.

**B. Proceedings**

No. 11-60007

Appellant filed a petition with the Tax Court, urging that the American Home and National Union contracts be read as one insurance policy for purposes of determining the amount of insurance premiums that were paid (and thus deductible) in 2004. The CIR countered that the amounts held in the National Union fund were not insurance premiums, but instead were non-deductible deposits against the deductibles under Appellant's American Home policies. The Tax Court ruled that the amount of $2,483,916 held by National Union at the end of 2004 was not properly deductible. This appeal followed.

## II. Discussion

### A. Standard of Review

We apply the same standard of review to Tax Court decisions that we apply to district court decisions: Findings of fact are reviewed for clear error and issues of law are reviewed *de novo*.[3] Clear error exists when we are left with the definite and firm conviction that a mistake has been made.[4]

### B. Analysis

#### 1. Contentions of the Parties

Appellant contends that, when read together, the American Home and National Union contracts are actually one insurance policy, and that a portion of risk is therefore shifted from Appellant to American Home through all three contracts taken as a whole. Appellant thus concludes that the funds held by National Union are actually insurance premiums to be paid to American Home. Appellant reasons that the National Union and American Home contracts should be considered as one insurance policy because (1) they were entered into on the same day as a "package deal", (2) American Home and National Union were both subsidiaries of AIG, (3) the American Home policies required Appellant to make

---

[3]  *Arevalo v. Comm'r of Internal Revenue,* 469 F.3d 436, 438 (5th Cir. 2006).

[4]  *Strever v. Comm'r of Internal Revenue,* 138 F.3d 216, 219 (5th Cir. 1998).

No. 11-60007

some provision for the "loss reimbursement endorsement", and (4) the only reason that Appellant contracted with National Union was to obtain the American Home policies.  Appellant does concede that "by itself, the National Union contract does not shift any risk of loss from F.W. Services to National Union" and that, on its own, the agreement "would not be an 'insurance contract'".

By contrast, the CIR reasons that the three contracts are in fact separate and that — with respect to the amounts remaining in the National Union fund at the end of 2004 — the National Union contract is not insurance.  Specifically, the CIR notes Appellant's admission that the National Union contract itself creates no risk shifting, asserting that, in substance, the National Union contract serves as a deposit fund to be used to reimburse American Home on Appellant's behalf for its future losses.

## 2.  Applicable Law

Under § 162(a), a taxpayer may deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business."  Treasury Regulation 26 C.F.R. § 1.162-1(a) specifies that "insurance premiums against fire, storm, theft, accident, or other similar losses in the case of business" may be deducted as business expenses.  The Internal Revenue Code does not define "insurance."

The Supreme Court has defined insurance as involving "risk-shifting and risk-distributing."[5]  Accordingly, in this circuit, "[r]isk shifting or risk distribution is one of the requisites of a true insurance contract."[6]  There is likely

---

[5] *Helvering v. Le Gierse,* 312 U.S. 531, 539 (1941).

[6] *Steere Tank Lines, Inc. v. United States,* 577 F.2d 279, 280 (5th Cir. 1978).

no risk when the total consideration paid for a policy exceeds the face value of the "insurance" provided.[7]

"Certainly, the mere presence of the customary [insurance] provisions does not create risk . . ."[8] Furthermore, even if the contract in question is related to an actual insurance contract — such as being entered into on the same day or attached to the actual insurance contract — this, in and of itself, does not make the former contract "insurance."[9] In light of these considerations, we look "through form to substance" when determining the tax effects applicable to a given transaction.[10]

We have held that funds set aside in reserve or deposit, even if paid to an insurance company, do not constitute insurance premiums, and therefore are not deductible.[11] Specifically, if a contract requires the "insured" to pay all losses, then there is essentially no risk-shifting to the "insurer" — thus no risk and no resulting "insurance".[12]

---

[7] *Helvering,* 312 U.S. at 542 (noting that there was no insurance risk where total consideration was prepaid and exceeded the face value of the insurance policy.)

[8] *Id.* at 541.

[9] *Legg v. St. John,* 296 U.S. 489, 494 (1936) ("The fact that the disability benefits are provided for in a "Supplementary Contract" issued on the same day as the policy and physically attached thereto does not make them life insurance.")

[10] *Estate of Weinert v. Comm'r of Internal Revenue,* 294 F.2d 750, 755 (5th Cir. 1961).

[11] *Steere Tank Lines, Inc. v. United States,* 577 F.2d 279 (5th Cir. 1978).

[12] *Id.* at 280 ("In the present case, there was no shifting of the risk, since [insured] was obligated to pay all losses."). Other Circuits have held that funds set aside for payment of anticipated losses in the context of reserve accounts are simply not insurance because they do not create any shift in risk. *Malone & Hyde, Inc. v. Comm'r of Internal Revenue,* 62 F.3d 835, 838 (6th Cir. 1995) (noting that "sums set aside for the payment of anticipated losses through reserves or otherwise, as a plan for self-insurance, are not deductible business expenses."); *Clougherty Packing Co. v. Comm'r of Internal Revenue*, 811 F.2d 1297, 1300 (9th Cir. 1987) (stating that "[w]hile insurance premiums are deductible, amounts placed into self-insurance reserves are not."); *Stearns-Roger Corp. v. United States*, 774 F.2d 414, 415 (10th Cir. 1985) (holding that "[s]elf-insurance plans whereby reserves are created or payments made into

No. 11-60007

We affirm the Tax Court's denial of Appellant's petition for essentially the same reasons stated by that court. At bottom, the amounts remaining in the National Union fund were simply not "insurance premiums" for purposes of 26 U.S.C. § 162(a) because the National Union contract created no shift in risk. Appellant urges that, under the Supreme Court's holding in *Helvering v. Le Gierse,* 312 U.S. 531 (1941), the three contracts must be read together. As shown by *Helvering*, however, reading the contracts together does not guarantee that the National Union contract will be interpreted as creating a shift in risk and, therefore, as constituting "insurance".[13] When we review the substance of the contracts, we are convinced, as was the Tax Court, that no shift of risk was created between Appellant and National Union and that there is no resulting alteration of the risk between Appellant and American Home.

As in *Helvering*, the total consideration paid for the National Union contract exceeds its face value. We noted earlier that the National Union contract specifically provides that the "premium" will cover the full loss reimbursement paid to American Home, explaining: "If the final premium is more than the premium you have paid us, you must pay us the balance. If it is less, we will refund the balance to you."

We are satisfied that the funds that *remain* in the National Union contract are simply held as a deposit in anticipation of *potential* future loss reimbursements to American Home. The fact that the American Home policies require Appellant to reimburse it for the first $500,000 of each claim does not mean that any account, contract, or fund that Appellant uses to set aside such funds for future reimbursement automatically qualifies as "insurance."

---

funds, accounts or trusts do not constitute 'insurance'" and are not deductible.).

[13] *Helvering,* 312 U.S. at 541 ("Considered together, the contracts wholly fail to spell out any element of insurance risk.").

No. 11-60007

We recognize that Appellant assigned its right to the funds held by National Union to American Home "as collateral to secure [its] payment of deductible loss reimbursements under the policies . . ." This assignment, however, does not alter or create any shift in risk: The funds serve solely as collateral to ensure that Appellant pays the loss reimbursements required under its policies with American Home. More specifically, the amount of the "loss reimbursement" or deductible under the American Home policies does not change as a result of the assignment. When we look through form to substance, the undisputed facts confirm that the National Union contract merely created a deposit account and did not create any shift in risk. And, absent such a shift, the deposit is not deductible as an insurance premium under § 162(a).

### III.  Conclusion

We AFFIRM the Tax Court's denial of Appellant's petition.