## Case No. 6,150.

### HART et al. v. DELAWARE INS. CO.

[2 Wash. C. C. 346.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1809.

MARINE INSURANCE — ABANDONMENT OF VESSEL— REPAIRS—FREIGHT.

1. Insurance on the freight of the Hannah, at and from New-York to Wilmington in North-Carolina, and thence to Barbadoes, and back to Philadelphia. At Wilmington, a cargo was prepared to be shipped in the Hannah, had she arrived there. The vessel was forced, by stress of weather, to put into Norfolk, and arrived there in a state of wreck. The agent of the plaintiffs gave notice to the defendants' agent at Norfolk, and requested him to have all the repairs made that were necessary; which he declined. The repairs would have cost upwards

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

of 3000 dollars, at which sum the vessel was insured. The plaintiffs offered to abandon, and the vessel was sold for 325 dollars. If the injury which the vessels sustained, exceeded one-half of her value, the insured had a right to abandon, unless the underwriters would agree, at all events, to pay for the repairs, though they should exceed what they were liable for, if only a partial loss had taken place.

[Cited in Peele v. Merchants' Ins. Co., Case No. 10,905.]

2. The underwriters are not bound to make or direct the repairs, in any case; but if the injury sustained exceed one-half the value of the vessel, and if the underwriters would prefer the voyage being prosecuted, they must engage to pay what will be necessary to fit her for the voyage, though it should exceed the sum underwritten.

[Cited in Peele v. Merchants' Ins. Co., Case No. 10,905.]

3. The refusal of the agent of the defendants to pay for such repairs only, as the defendants were liable for, and not for all the necessary repairs, authorized the abandonment.

4. Risk is the subject of the contract of insurance, and until the risk commences, the contract does not attach.

5. Generally, an inchoate right to freight does not commence until the cargo is put on board; but if the freight is insured in a valued policy, the right to indemnify attaches, if any part of the cargo is shipped.

6. If the insured, in virtue of a contract with a third person, has an inchoate right to freight as soon as the voyage commences, although before the cargo is taken in, there the risk commences, and the policy attaches, in virtue of the contract, as soon as the voyage commences.

Action [by Hart, Vandyne and Patterson] on a policy of insurance, dated 3d September, 1806, on freight of brig Hannah, at and from New-York to Wilmington in North-Carolina, at and from thence to Barbadoes, with liberty to go to another British island, at and from thence to the city of St. Domingo, there, and at the usual loading places on the coast, and after completing her cargo, to return to New-York. The usual memorandum was at the foot, which proceeded to state, that it was understood the vessel was insured, in and out of port, during the whole voyage. The policy, as to the printed part, was the common form of a policy on cargo, but at the foot was declared to be on freight: 2000 dollars was subscribed, at a premium of 11 per cent. The same defendants also underwrote policies on the vessel and cargo, at the same premium. The order of insurance stated, that the cargo was to be taken on board at Wilmington. It appeared in evidence, that the brig, on the 25th of August, sailed on the voyage insured, but was so injured by tempest on the coast, that she was obliged to cut away her masts, and got into Norfolk, a wreck, about the middle of September. The defendants having an agent at Norfolk, (viz. Mr. Granberry,) the plaintiffs' agent (Mr. Myers) applied to him to have the vessel repaired. It appeared, from the testimony of Myers, that Granberry refused to have all the repairs made that were necessary, and also refused to agree to pay for the whole that might be made, although he consented to pay

for the repairs in part. About the middle of December, Myers wrote a note to Granberry, calling upon him to have the necessary repairs made, or to direct what repairs should be made, and to agree to pay Myers all such sums of money as he should expend in the repairs, and in supplying the wants of the captain. In answer to this note, Granberry declined making the repairs himself, but consented that Myers should have such as are usually made, and promised to pay whatever sum the defendants may be liable to pay. It was proved by a Mr. Williamson, a shipwright, that he was directed to repair the vessel, and that he went on board to do so: but that the captain refused to allow him, saying that Myers had spoken to another shipwright to do it. The vessel was about fourteen years old, her tonnage 146, and it is stated by the witnesses that her repairs would have cost upwards of 3000 dollars. She was insured at that sum. On the 1st of January, the plaintiffs offered to abandon, which was refused. The vessel was sold as she lay, at public action, for 325 dollars. It was proved, that a cargo of staves was provided, and was waiting for her at Wilmington, which, after the loss of the vessel, were sold at a small loss. Had she performed the voyage, she would have earned a freight equal to the sum insured.

The recovery was resisted, upon the following grounds—First. That there was not a total loss. It was the duty of the owner to repair his vessel, to enable her to earn her freight; and the insurers were not bound to repair, or to direct what repairs were to be made, or to bind themselves to pay for them. But if they were so bound, they had agreed, by their agent, to do all that could legally be required, viz. to make usual repairs and to pay what they were legally bound to pay. Besides which they offered to make the repairs, and were refused by the captain. Marsh. Ins. (2d Ed.) 488, 582; 1 Johns. 205, 321. Second. There was no inception of this risk, and consequently the policy never attached. The plaintiff had not an insurable interest, until the cargo was taken on board. Marsh. Ins. (2d Ed.) 278–280, 323; Abb. Shipp. 203. If it be contended, that wager policies are allowable in this country, which may well be questioned, still they should upon their face appear to be so, as interest or no interest, free of salvage, etc. Park, Ins. 259. Third. The loss was treated as a partial loss for three months; and it was then too late to abandon.

On the other side, it was contended, that the loss was total, when the vessel got to Norfolk, the repairs amounting to more than half the value of the vessel. Where this is the case, the insurer must agree to pay for the repairs at all events, if he would prevent the insured from abandoning. Goss v. Withers, 2 Burrows, 683; Dacosta v. Newnhan [2 Durn. & E. (2 Term R.) 407.] Second. Under all the circumstances of this case, the contract between the parties amounted to an agreement that the risk should commence with the commencement of the voyage; in which case, it does not differ from a charter party. 6 Term R. 478; 7 East, 400; Park, Ins. 267; 2 East, 544; 3 Term R. 362. Third. No abandonment is necessary, upon a policy on freight. 5 Bos. & P. 310.

Edward Tilghman and Mr. Tod, for plaintiffs.

Rawle & Condy, for defendants.

WASHINGTON, Circuit Justice (charging jury). The first question is, was there in this case a total loss? It is strongly to be presumed, from the age of the vessel, her tonnage, the cost of her necessary repairs, and the price at which she sold, that the injury to be repaired would have exceeded more than half her value; but of this, you are to judge. If this was the fact, the insured had a right to abandon, unless the underwriters would agree, at all events, to pay for the repairs, although they should exceed what the underwriter would have been answerable for, if only a partial loss had happened. It is true, that the underwriter is not bound to make, or to direct, the necessary repairs, in any case. But if the injury sustained is such that the insured may turn it into a total loss, the underwriter, if he would prefer the voyage being prosecuted, must engage to pay what may be necessary to fit her to prosecute the voyage, though it should exceed what otherwise he might be liable for.

The question then is, did the agent of the underwriters agree to answer for such repairs? Mr. Myers declares, that he would only consent to pay for partial repairs; and it appears, by his answer to Mr. Myers' note, that he would only agree to pay what the underwriters were legally bound to pay. But the underwriters were not bound to pay beyond their subscription, and the repairs would have cost between three and four thousand dollars. The insured, therefore, was not bound to make those repairs at his own risk, and was consequently at liberty to treat the loss as total, unless you should be satisfied, by Williamson's evidence, that whatever difference may have arisen between Myers and Granberry, the latter did consent to repair the vessel, and would have done so, had he not been prevented by the captain. If Williamson is believed, it is certainly very difficult to account for, and still more so to justify, the conduct of the agents of the insured upon this occasion, in refusing a compliance with their own proposition; and if you are satisfied that this offer was made, and a willingness shown to carry it into effect, the plaintiffs had no right to turn this into a total loss. You are alone proper to decide how this fact was; and, having satisfied yourselves respecting it, you will find no difficulty in applying the law to it, as the court has stated it to you.

The next question is purely a point of law. Had the plaintiffs an insurable interest, before or at the time when the loss happened, as stated by one of the counsel; or, had the risk then commenced, as it is put by another? There is no difference between. them. Risk is the subject of the contract of insurance. If there be no risk, there can be no contract. Until the risk commences, the contract does not attach. If the insured cannot or will not commence the risk, he has no claim to indemnity, and the underwriters cannot retain the premium. In an interest policy, there can be no risk, if there be no interest. The risk, then, can only commence when the interest commences—which leads to the question, when does an inchoate right to freight commence? The answer is, when the goods are put on board. This is the general rule, as laid down in the case of Tonge v. Watts [2 Strange, 1251], which, I believe, has never been questioned. It is true, that if the policy be valued, the right to indemnity attaches, if only a part of the cargo is taken on board, and then a loss happens; because, in such a case, it is only necessary to prove some interest, to entitle the insured to recover the whole sum insured. So, likewise, if the insured, in virtue of a contract with a third party, has an inchoate right to freight, as soon as the voyage commences, though before the cargo is taken on board; the risk commences, and the policy attaches, in virtue of the contract, as soon as the voyage is commenced. This is the case of. Thompson v. Taylor [6 Durn. & E. (6 Term R.) 478.] But the general rule is as before stated. But although, in this case, the plaintiffs had not an insurable interest before the cargo was taken on board, it may be asked, had they not a right to insure expected profits, although they were dependent upon no contract with third persons? The answer is, that if the defendants agreed to insure in this way, they are liable, in case of a loss from any of the perils insured against, and not otherwise. The difficulty is, was this the understanding of the parties? We have had two opinions upon the point, and therefore state our present impression with some diffidence. But when we consider all the circumstances of this case—that the defendants knew that the cargo was to be taken on board at Wilmington—that they insured the vessel and freight at the same premium. and stipulated, in the memorandum to the policy, that the vessel was insured, in and out of port, during the whole voyage, we are of opinion, that the risk in respect to the freight, was understood to commence as soon as the voyage commenced; that is, that the profit expected to be made by the freight of the vessel, should not be prevented by any of the perils insured against.

The jury, after having been out some time, returned into court, and asked the opinion of the court, whether, if the brig had been repaired, so as to fit her for the voyage, either by Myers, in consequence of Granberry's letter to him, or by Williamson, who was sent on board for the purpose, the underwriters. would have been liable for the whole expense, provided it exceeded the amount insured? The answer given was, that if the repairs had been made by Williamson, under the orders of Granberry, the agent of the defendants, the defendants would have been liable for the whole expense, though it had exceeded the amount insured. But if the repairs had been made by Myers, they must have been upon the terms of Granberry's letter, which did not bind the defendants further than the law bound them, and that would not have been to an amount exceeding the sum insured.

Verdict for defendants.