ESTATE OF ANNA M. KELLER, PIUS P. KELLER AND MARCELLA V. KELLER, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93221. Promulgated May 25, 1939.

*Ferdinand P. Weil, Esq.*, for the petitioners.
*Paul E. Waring, Esq.*, for the respondent.

1054

OPINION.

BLACK: The question involved has been previously stated. The applicable statute is section 302 of the Revenue Act of 1926 as amended by section 803 (a) of the Revenue Act of 1932 and section 404 of the Revenue Act of 1934, the material provisions of which are set out in the margin.[1]

Petitioners contend that the amount of $20,030.43 paid by the insurance company to the decedent's daughter Marcella V. Keller

---

[1] SEC. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

\* \* \* \* \* \* \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

\* \* \* \* \* \* \*

(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life.

represents "insurance under policies taken out by the decedent upon her own life" as that term is used in subdivision (g) of the applicable statute, and that, since the amount was not in excess of the specific exemption of $40,000 provided for in subdivision (g), no part thereof should be included in the decedent's gross estate. No other beneficiaries received any amount as insurance under any policy taken out by the decedent upon her own life, and the $20,030.43, if insurance, was the only insurance received by Marcella V. Keller as the beneficiary under a policy taken out by the decedent upon her own life. On the other hand, the respondent contends that the insurance policy and the annuity contract must be regarded as one single, indivisible contract between the decedent and the insurance company; that as so regarded the two contracts in substance amounted to a "transfer" of $21,200 (the total premiums paid for both contracts) made by the decedent during her lifetime both (1) in contemplation of death, and (2) under such circumstances whereby the decedent retained for her life the enjoyment of or the right to the income from the property transferred; that the value of the transfer upon the decedent's death was the amount of $20,030.43 which was paid by the insurance company to the decedent's daughter; and that the latter amount was therefore includable in the decedent's gross estate under subdivision (c) of the applicable statute referred to above and not under section 302 (g) as insurance.

The controversy in this proceeding concerns two separate and distinct contracts, one a single premium life insurance policy and the other a single premium life annuity. Both policies were written on the regular standard forms and on the basis of the respective mortality table ordinarily used in writing life insurance and annuities, respectively. Each contract contains a proviso to the effect that the agreement and the respective application therefor "constitute the entire contract between the parties." The application for each contract was made by the decedent on the same day and the contracts were executed on the same day. Petitioners, however, concede that the insurance company would not have issued the life insurance policy to the decedent at her attained age of 75 without issuing a life annuity contract "in conjunction with" the life insurance policy, but contend that this requirement was merely a condition precedent to the issuance of the life insurance policy which was imposed by the insurance company for the purpose of reducing but not entirely eliminating its risk against loss due to premature death, and that such a condition when once complied with does not make the insurance policy when once issued any different than any other insurance policy issued on identically the same kind of form to an applicant who is not required also to purchase an annuity. Petitioners argue that in-

surance companies have a right to require certain reasonable conditions precedent before they will issue a certain type of policy, but, once this condition precedent is complied with, the contract must be interpreted in accordance with its actual terms. Williston, in his chapter on general rules for the interpretation or construction of contracts, says at section 628:

Where a writing refers to another document, that other document, or so much of it as is referred to in it, is to be construed as part of the writing. * * * Even where a writing does not refer to another writing, if such other writing was made as part of the same transaction, the two should be construed together. It is usually said that the two writings together form one contract. Though this is generally true, it is not always accurate, even though the several writings are part of the same bargain. Where one of the writings is a formal document it cannot be incorporated in an ordinary writing. A note and a mortgage to secure it are not strictly one contract, though doubtless each is to be construed in connection with the other in order to determine its meaning. * * *

In the instant proceeding it is our opinion that the two contracts must be construed in connection with each other and that in so doing it is of no great importance whether the things agreed upon by the decedent and the insurance company on December 31, 1934, were embodied in one policy or two. The question in either event remains the same, namely, whether the amount of $20,030.43 paid by the insurance company to the decedent's daughter was paid to her as "insurance" as petitioners contend or as the result of a transfer in trust or otherwise made by the decedent in contemplation of death and intended to take effect at death as the respondent contends and not as "insurance."

Even if the decedent and the insurance company had executed all the things they agreed to on December 31, 1934, in one document instead of two, the cases hold that if the agreement sets forth separate features which are clearly severable, each feature must be given its proper application. *Equitable Life Assurance Society of United States* v. *Deem*, 91 Fed. (2d) 569; *Connecticut General Life Insurance Co.* v. *McClellan*, 94 Fed. (2d) 445; *Downey* v. *German Alliance Insurance Co.*, 252 Fed. 701; *Legg* v. *St. John*, 296 U. S. 489.

In *Legg* v. *St. John, supra,* the question before the Supreme Court was whether Legg, a voluntary bankrupt, or his trustee was the person entitled to certain future monthly disability benefits payable under a contract entered into between Legg and an insurance company before the adjudication. Several years prior to the adjudication Legg took out a life insurance policy under which the company agreed, in consideration for a stated annual premium, to pay a certain amount upon his death. By a supplementary contract issued on the same day and attached to the policy, the company, in consideration for an additional annual premium of a stated amount, agreed to pay

a monthly benefit of $174.52 upon due proof of total and permanent disability, which latter event happened several years before the adjudication. In holding that the disability benefits were payable to the trustee and not to the bankrupt, Mr. Justice Brandeis in the course of his opinion said:

Second. The fact that the disability benefits are provided for in a "Supplementary Contract" issued on the same day as the policy and physically attached thereto does not make them life insurance. The life policy and the contract were executed as distinct instruments. The "Supplementary Contract" was to operate for some purposes as if a part of the life policy. But for all other purposes it is a separate obligation. The hazards covered by the two instruments are obviously different. The beneficiaries differ also. The payment under the life policy was to be made to the wife; the disability benefits are to be paid to Legg himself. A separate and different premium was exacted for the obligations assumed in each instrument. It was provided that forfeiture of the life policy would terminate all rights arising from disability; but the supplementary contract could be terminated by Legg without affecting otherwise his life policy.

In the instant proceeding we think the agreement between the decedent and the insurance company as evidenced by the two documents, the insurance policy and the annuity contract, shows an intention on the part of the contracting parties to enter into an insurance and annuity contract with clearly severable features as to each, rather than a contract of trusteeship with no separate features. For example, the insurance company agreed to pay Mrs. Keller a life annuity of $390.84. Her life expectancy was 10.5 years when the contract was taken out and if she had lived that expectancy the total payments to her would have been $4,103.82 which apparently would have been a full return except the comparatively small amount for "loading" to her of the premium of $3,258.20 plus the interest earned thereon. But suppose she had lived to be as old as her mother and grandmother, which the evidence shows was 90 years each. That would have meant that the insurance company would have paid her annuities of $390.84 for 15 years which would have been $5,862.60. This would apparently have been considerably more than the total premium of $3,258.20 which she paid for the annuity, plus the interest earned thereon. Of course, regardless of how long Mrs. Keller had lived, the insurance policy of $20,000 payable at death to her designated beneficiary would have remained the same. Attention is called to these features in order to show the clear separability of the two contracts notwithstanding that they were taken out as parts of one transaction. The writings did not take the form of any declaration of trust. No provision was made for any compensation to be paid the insurance company as a trustee. The decedent was referred to in one instrument as "The Insured" and in the other instrument as the "Annuitant." The only considerations contracted for by the insurance company were the two separately

stated premiums of $17,941.80 and $3,258.20, respectively. Each premium was based upon a different mortality table, one appertaining to life insurance and the other to life annuities. The obligations of the insurance company, as we have already pointed out, were different as to each separate feature. In consideration for the single premium of $17,941.80 it agreed to pay the decedent's daughter $20,000 upon receipt of due proof of the death of the decedent. This feature also provided for a participation in dividends and provisions for loans and a cash surrender value. The latter began at $16,280 after the policy had been in force for one year and gradually increased to $19,400 over a period of 20 years. In consideration for the single premium of $3,258.20 the company merely agreed to pay the decedent a semiannual annuity of $195.42 during her lifetime. The latter had no cash surrender value and all obligations under this feature ended completely upon the death of the decedent. After a period of one year the insurance feature could be eliminated by the decedent electing to surrender that feature for its cash value without in any way affecting the annuity feature. It seems to us that the situation is simply this: Even assuming that Mrs. Keller did not want to purchase an annuity (and we have no evidence to that effect) and only did so because she had to do it to secure the life insurance policy which she did want, nevertheless when the purchase was complete she owned two contracts and we have no cause to say that her life insurance policy was not life insurance merely because she had to purchase an annuity policy along with it. We are cited to no authority which would compel any such holding. Suppose we look at the insurance policy from the standpoint of the insurance company which wrote the policy rather than from the standpoint of petitioner, who took it out. The evidence in this proceeding shows that in determining its liability with respect to outstanding contracts the insurance company included in its annual statement to the Superintendent of Insurance of the State of New York for the year ending December 31, 1934, the insurance policy at a present value of $16,580. Reserves, of course, had to be carried by the insurance company for this amount to make good its liability under the policy. Under the provisions of section 203 (a) (2) of the Revenue Act of 1934, in determining its net income subject to tax the insurance company is allowed to deduct "An amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year * * *." Could it be plausibly contended that the insurance company in determining the mean of its reserve funds would not have the right to include the reserves held to insure the payment of this insurance policy? We think not. It seems to us that the named reserve of $16,580 would be such reserves as are contemplated by section 203 (a) (2). They are not mere solvency reserves. They are life

insurance reserves "required by law." Cf. *Helvering* v. *Illinois Life Insurance Co.*, 299 U. S. 88; *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686.

Notwithstanding these separate features to which we have referred, which we think are severable and should be so treated, the respondent contends that because the insurance company would not have issued the insurance policy without the annuity this fact alone controls and brings the instant proceeding within the rule enunciated in *Old Colony Trust Co. et al., Executors*, 37 B. T. A. 435; affirmed by the First Circuit on March 2, 1939, 102 Fed. (2d) 380, and followed in *Chemical Bank & Trust Co. et al., Executors*, 37 B. T. A. 535. Those cases, however, involved an entirely different situation than is involved here in that there was no separate insurance feature present in either of them. In the *Old Colony* case the contract was designated on its face "life annuity with principal sum payable at death." In the *Chemical Bank* case the contract was designated on its face as "Investment Annuity. Death Refund Payable at Death of Annuitant." Life insurance was not mentioned in either contract. There was but one consideration paid in each of those cases, whereas the decedent here agreed to pay two separate premiums, one for insurance as such and the other for an annuity as such. The contracting party other than the respective insurance company in each of the cases relied upon by the respondent was referred to throughout those instruments as the "Annuitant" and nowhere therein was he ever referred to as the insured. The annuity in each case was calculated on a basis of 3½ percent on the principal sum and only this 3½ percent was paid to the annuitant plus any excess interest earned and there was no diminution of the principal fund. Even as to the kind of contracts just described, the court in *Bodine* v. *Commissioner*, 103 Fed. (2d) 982, held them contracts of insurance and in that respect took issue with *In re Thornton's Estate*, 186 Minn. 351; 243 N. W. 389, and *Ballou* v. *Fisher*, 154 Ore. 548; 61 Pac. (2d) 433. In the *Old Colony* case the "principal sum" of $40,000 was payable to the annuitant "at any time, provided there is no legal restriction to the contrary" and in the *Chemical Bank* case the "death refund" of $20,000 was payable to the annuitant "at any time prior to the death of the Annuitant * * *." In the instant proceeding the annuity feature had no cash surrender value, and the decedent after paying her single premium of $3,258.20 could recover not one cent more than her semiannual annuity of $195.42 and these payments ceased with the last payment falling due prior to her death. In the instant proceeding the decedent could have surrendered her insurance policy after it had been in force for one year for its stated cash surrender value of $16,280, which was $3,720 less than its face amount, and the surrender thereof would not have effected her

annuity in any way. Cash surrender values are common incidents of life insurance policies. *Legg* v. *St. John, supra.*

It is these differences which we think compel us to recognize the separate features of "insurance" and "annuity" that are here involved. The annuity contract issued to the decedent was the same contract that would have been issued to any female person of her age for a single premium of $3,258.20. It was a plain annuity, no more and no less. Likewise the insurance policy was a plain, ordinary policy of insurance. It was no different in its terms from hundreds of insurance policies that are being written by the insurance companies every day. We think effect should be given to these policies in accordance with their plain terms, rather than to hold as the respondent has determined. It is therefore our opinion that at the time of the death of Anna M. Keller she was the owner of a $20,000 insurance policy in the Equitable Life Assurance Society of the United States, of which her daughter, Marcella V. Keller, was the designated beneficiary and the $20,030.43 in question represents "insurance" as that term is used in section 302 (g) of the Revenue Act of 1926 as amended, and since the amount is not in excess of the $40,000 exemption provided for in the statute, no part thereof is includable in the decedent's gross estate. Congress can, of course, remove the $40,000 insurance exemption contained in section 302 (g) at any time it sees fit, but as long as the exemption is there we have no cause to deny it under such circumstances as exist in the instant case.

Reviewed by the Board.

*Decision will be entered for the petitioners.*

---

HARRON, concurring: The provisions of section 302 (g) of the Revenue Act of 1926 as amended provide that there shall not be included in the value of the gross estate of a decedent any amount not in excess of $40,000 receivable by beneficiaries "as insurance under policies taken out by the decedent upon his own life." The Equitable Life Assurance Society of the United States issued a single premium life policy on the life of Anna M. Keller on December 31, 1934, in the face amount of $20,000 in consideration of a premium of $17,941.80. After the death of the insured, the insurance company paid to the beneficiary of the insured the face amount of the policy plus a post mortem dividend. There can be no question whatever that the insurance company entered into a contract to pay a certain sum upon the death of an insured person in excess of the premium paid and fulfilled that contract. The question comes to this Board upon facts relating to a completed bona fide contract. Strictly speaking, we are not concerned with matters of concern only to the insurance company such as whether it waived some

of its usual procedures preliminary to executing the contract, such as physical examination of the insured. Nor is it material in this case that the insurance company executed a life insurance contract in conjunction with an annuity contract. Insurance companies sell many types of insurance which combine life insurance with other benefits such as annuity payments. Such policies have various names, such as endowment policies. In the instance before us, the insurance company executed two policies, one an annuity policy. To the insurance company, there were two contracts having separate terms and separate benefits. Upon the death of the insured the annuity contract terminated and nothing passed under this contract to decedent's beneficiary. May we go outside the terms of executed contracts fully performed and decide the question as though the parties had executed a different contract or contracts? I believe we may not do so, at least where the contracts are bona fide. Further, it may not be said that the question, as decided by the majority opinion, has been decided upon a superficial consideration of labels attached to contracts. The insurance company issued a standard insurance policy upon the life of the decedent and set up upon its books a contract of life insurance. It treated this contract separately from the annuity contract executed at the same time and there is no basis in fact for stating that one contract lost its identity in the other any more than could be said if an individual executed two separate contracts of insurance upon his own life on the same date and paid separate premiums for each just because the moneys paid merged with other funds of the insurance company. Perhaps the risk of the insurance company was lessened by the purchase of the annuity policy at the same time, but it does not follow that every element of risk was eliminated. As a matter of fact, the decedent died before expiration of the expectation of life which she had under American Experience Mortality Tables. The insurance company took the risk that the insured might not survive her full life expectancy, as an insurer does under every life insurance contract. The facts do not, in my opinion, afford a basis upon which could be made a finding of fact or a conclusion on a mixed question of law and fact that the single premium life policy, No. 9,652,636, was not insurance on the life of decedent. Unless such finding can be made, we are not justified in holding that the proceeds of that policy do not come within the statutory exclusion allowed by section 302 (g).

In *Old Colony Trust Co. et al., Executors*, 37 B. T. A. 435, the facts were substantially and materially different from the facts in this proceeding. The contract involved there had none of the characteristics of a life insurance contract, other than that an amount was payable on the death of the annuitant to his beneficiaries. The total premium paid for that policy exceeded the face amount of the policy. There

the insurance company did not *waive* any of its usual procedures preliminary to issuing life insurance for the plain reason that it was not writing a life insurance policy. The premium paid was not computed as is a premium for life insurance. The death of the annuitant was not the sole contingency for payment of the face amount of the policy. That case is clearly a different case from the present one and there is no inconsistency between our holding there and our holding here. As a matter of fact, the holding advocated by the dissenting opinion can be reached only by a substitution for the terms of the contracts executed of terms that are composed by the dissent and that are not the terms adopted by the parties to the contracts before us. The doctrine of construction of contracts advocated by the dissent is not properly applied here as the dissent would have it applied. For the above reasons, I concur in the majority opinion.

------

DISNEY, dissenting: The problem here is whether subsection 302 (g) of the Revenue Act of 1926 shall be so construed as to vitiate and nullify subsection (c) in this proceeding. The majority opinion has so construed it, erroneously, in my opinion. The gist of the reason for such construction by the majority opinion is the fact that the deceased received from an insurance company a form denominated a "Single Premium Life Policy. Insurance Payable At Death." The contention is, in effect, that because therein the words "insurance" and "insured" were used, that they must be construed in the usual acceptation of the terms, regardless of other language used, and that therefore the situation falls under subsection 302 (g), rather than under subsection (c). Faced by the fact of the issuance of the so-called life insurance policy simultaneously with and "in conjunction with" an annuity policy, without which the "insurance" would not have been written, the majority opinion in words agrees that the two policies must be construed in connection with each other, but in fact in the next breath insists upon a separation, upon the theory that although the two policies formed one contract, the insurance policy feature and the annuity feature were divisible elements, that the whole transaction was not an entire, but a severable or divisible contract, and that the annuity policy was a mere condition precedent to the insurance policy.

This is, I think, basic error. That two such policies issued together do form one contract is almost, if not quite, elementary—and as above stated, this is not denied in the majority opinion. See *Urwan* v. *Northwestern Life Insurance Co.*, 103 N. W. 1102; *Schreiber* v. *German-American Hail Insurance Co.*, 45 N. W. 708; *Timlin* v. *Equitable Life Assurance Society of United States*, 124 N. W. 253. Moreover, language in a contract or deed is primarily and ordinarily to be con-

strued as a term or covenant thereof and not as a condition precedent. *Woodruff* v. *Woodruff*, 16 Atl. 4; 44 N. J. E. 349; *Detroit Union Railroad Depot & Station Co.* v. *Fort St. Union Depot Co.*, 87 N. W. 214.

In the face of this general principle of construction, there is no justification, I think, for holding that the annuity feature was a condition precedent, rather than an indivisible part of a contract. The citation by the majority of *Legg* v. *St. John*, 296 U. S. 489, is on its face inapplicable, for it states (referring to the "supplementary contract" unsuccessfully sought to be incorporated into the principal contract) : "But for all other purposes it is a separate obligation." This refers to other language of the decision which specifically points out that the supplementary contract was, as to the feature at issue, covered by language of the policy that: "No other provision of said policy shall be held or deemed to be a part hereof." Other citations as to cases involving "separate features which are clearly severable" are of course not in point here where the annuity feature was, on the contrary, clearly inseparable. That it is indivisible, inseparable from the life insurance feature, is demonstrated by the most effective of facts—that the life insurance feature would not have been written without the annuity feature. The company joined the two features. We can not with good logic treat them otherwise. It is impossible for me to discern how these two features can be severable, as the majority sever them. The annuity feature is no condition precedent, but a term, provision, or part of what the majority must perforce and does conclude is to be interpreted as a single contract. The doctrine of conditions means just what it says, that is, it entails a condition, a state of affairs or a fact upon which the existence of the contract depends, but an attempt to make one contract depend upon another contract as a condition precedent is merely to admit that the contracts form one, that additional provisions are agreed upon, and are to be construed together. One is not separate and a condition of the other, but each loses identity in the completed agreement. Thus, we see that there is no condition precedent entailed here, but a mere question of the proper interpretation of two terms of a contract, which under the ever prevalent rule must be considered as a whole to ascertain the intent of the parties. *Welch* v. *Union Central Life Insurance Co.*, 78 N. W. 853; *Mutual Life Insurance Co.* v. *New*, 51 So. 61. But if we read the contract as a whole, how can it be said that the insurance feature is independent when it depended completely upon the inclusion of the annuity feature without which the insurance company would not enter into a contract? Had the consideration or the annuity failed, such as by dishonoring of a check, can there be any doubt that the insurance company would have immediately contended that the contract was an integer, indivisible and inseparable, and that

they could not be held to the insurance feature alone? Yet to answer the query in the affirmative is to admit that this contract as a whole was not insurance, but was a hybrid, not to be construed merely as an insurance policy—which is what the majority opinion does by the expedient of separating the "insurance" policy and regarding it only. If joint construction of the two policies, as a whole, is required, however, obviously what has been said by us in *Old Colony Trust Co., Executor*, 37 B. T. A. 435, and upon the affirmation thereof by the Circuit Court, 102 Fed. (2d) 380, and in the authorities there cited, applies fully, and we have before us nothing different in essence and fact from the annuity with payment at death, involved therein, and involved in *Chemical Bank & Trust Co. et al., Executors*, 37 B. T. A. 535, for when the essential nature of the different situations is examined, the controlling fact in each is seen to be that an amount of money was placed with an insurance company with income reserved to the decedent and without the feature of true and usual insurance risk carried by the insurance company—for which reason such contracts were found not to be applicable to subsection (g).

Cooley on Insurance, vol. I, p. 80, says:

From what has been said it is evident that *the primary requisite essential to the existence of every contract of insurance is the presence of a risk of loss.* The insurer, in return for a consideration paid to him by the insured, assumes this risk, and wherever such risk exists and is assumed by one of the parties to the contract, whatever form a contract may take, it is in fact a contract of insurance. Risk is essentially the subject of the contract. If there be no risk there can be no contract, and until the risk commences the contract does not attach. (*Hart* v. *Delaware Ins. Co.*, 11 Fed. Cas. 683.)

\* \* \* \* \* \* \*

The risk which is essential to a contract of insurance must not be so great as to be prohibitory of the enterprise in which it is encountered. There must, in order that there may be successful insurance, be a sufficiently large number exposed to the same risk to make it practicable and advantageous to distribute the loss falling upon a few. As indemnity against loss is at the foundation of insurance, the business must be regarded as a system of distributing losses upon the many who are exposed to the common hazard. (*Nye* v. *Grand Lodge A. O. U. W.*, 9 Ind. App. 131, 36 N. E. 429.) Out of the co-existence of many risks arises the law of average, which underlies the whole business of insurance. This is true, whether the insurance is on property or on lives. Life insurance especially is founded on the law of averages. The average rate of mortality is the basis on which it rests, and by spreading their risks over a large number of cases the companies calculate on the average with reasonable certainty and safety. (*New York Life Ins. Co.* v. *Statham*, 93 U. S. 24, 23 L. Ed. 789.)

*Curry* v. *Washington National Insurance Co.*, 194 S. E. 825, says:

The definition of a contract of insurance imports the assumption of a risk by the insurer and the payment of a consideration therefor by insured.

The above clearly states the essential nature of life insurance. A contract which, instead of the insurance company assuming the risk

of death of the insured, provides that the insured himself carries that risk, is patently violative of the above essential principle of insurance. Yet here that situation is plainly found. The applicant was not insurable because of age—so completely not insurable that a physical examination was immaterial and was not required. The facts found recite "* * * *provided satisfactory evidence of insurability is furnished* a life insurance policy may be issued in the absence of an annuity contract." [Italics supplied.] In that situation the applicant in effect said: "I will carry the risk. I will pay you, the insurance company, a sum of money over and above the single premium for the 'insurance policy,' sufficient that you, provided only that you invest the money paid you at your usual rates of return, will at all times have the funds with which to pay me an 'annuity' and upon my death pay my beneficiary a certain sum." It can not be denied, I think, that the applicant was carrying the risk, for the annuity contract was required "due to the amount of risk involved, namely, the difference between the consideration and the death benefit." The applicant plainly supplied the money to absorb the risk, the difference between $17,941.80 single premium, and $20,000 death benefit, when she paid $21,200. The $195.42 payable semiannually was less than 2 percent upon the $21,200, and the company took not the slightest risk, except the risk that it might conceivably not earn so much as 2 percent upon the $21,200—but that is patently an investment risk, and not the risk of having the "insured" die before paying in enough premiums to make the company safe. That is the insurance risk, which an insurance company assumes for the insured and can carry more safely than can he, because of the broad spread over many people. Contrary to the situation involved in true insurance, it was in nowise affected by an early death of the applicant, for the $20,000, and the money above that amount, was already paid in, ever present in amount sufficient to pay the $20,000 and the annuity income agreed upon, dependent only upon rate of earning exceeding the small percentage required for the annuity payments. The very base and plinth of the whole theory of life insurance denies that life insurance risk is entailed therein. (The dividends which might be paid are immaterial, since they would be paid only upon earnings after reservation of a percentage greater than that required to pay the annuity income, and initial expenses, such as commissions paid, are immaterial, for they are no part of the risk assumed for the insured by the company. The same applies to the fact of surrender value in the "insurance" feature, for the amount remaining for protection of the annuity is decreased only proportionately with the decrease in liability thereon, since the same basis of mortality table applies to both features. The annuity contract, standing alone, involved risk, but when made one with the "insur-

ance" feature—which is what the company insisted upon—its risk was mathematically absorbed by the moneys paid in under the name of single premium.)

The *ratio decidendi* of *Old Colony Trust Co. et al., Executors, supra,* and the cases correlated therein was the lack in the contracts considered of the essential element of life insurance risk, as above set forth, and the lack of such expressions as "insurance" or "insured", though mentioned, was not the crucial point. Terms do not control and a phrase can not contradict reality. *Stearns Co.* v. *United States,* 291 U. S. 54. "The nature of the contract must be determined from its contents and not by its terminology." *Physicians' Defense Co.* v. *O'Brien,* 111 N. W. 396.

It seems to me that therein lies the basic error in the majority opinion, for because of the existence of the expressions "insurance" and "insured" in one part of the indivisible contract involved, the majority believe that we should find that insurance is involved. It is true that reliance is placed in a sound principle of a statutory interpretation, to wit, the use of words in their ordinary sense. The majority opinion therefore says, in effect, that section 302 (g), because of reference to "insurance", involves any policy which bears the name of insurance. That principle of statutory construction however is patently subject to the other, just above expressed, that terms alone do not control, and the facts must be examined. Moreover, another principle of construction, coordinate if not more important, seems to be neglected by the majority opinion—the principle that legislative intent must be ascertained. No examination of that question appears in the majority opinion, yet in the interpretation of section 302 (g) in *Commissioner* v. *Jones,* 62 Fed. (2d) 496, we find the following:

* * * It seems to us that the provisions of subdivision (g) relied upon by the Commissioner are to be interpreted in the light of the purpose to be effected in excluding from the gross estate insurance in the amount of $40,000 receivable by beneficiaries other than the estate * * *.

It seems obvious that the purpose of Congress in exempting $40,000 of life insurance payable to beneficiaries other than the estate was the same as the public policy involved in the statutes of many states exempting insurance in general for the wife or family; in other words, that Congress recognized a beneficent public policy in providing that insurance should form an estate for dependents and that by insurance, therefore, one could build up such an estate. Equally obvious, however, such public policy was not necessary in the case of one who did not need to build up an estate but already had funds with which he could not only pay for a single premium life insurance policy, but could, if *not insurable because of age or physical condition,* pay in such an additional amount of money in a combination of life

insurance and annuity that the company would deal with him because it was financially safe, he having paid "the amount of the risk involved, namely, the difference between the consideration and the death benefit." Yet under the majority opinion the benefit of section 302 (g) is extended to him and his estate escapes estate tax because he for a consideration costing more than insurance had obtained as a *part* of a contract the *form* of a life insurance policy, a contract which the company would not enter, requiring a different and broader agreement. The insurance company added a feature which the majority will not add.

I can not bring myself to believe that one subsection of this section of the revenue law should here be interpreted so as to render ineffective the other, but feel rather that the two subsections should be harmonized if possible and that we should arrive at a conclusion that subsection (g) is applicable only if subsection (c) is not violated in the facts, and not apply it merely because we find the word "insurance" in a contract which is, and was intended by the parties, as investment, as a contract of transfer of property with retention of income for life, of the very nature forbidden by subsection (c). Insurance does not have such effect. The contract here involved does, and I conclude that it is not insurance, but is a transparent device to use, in order to escape estate tax, the expression "insurance", though it is a part, and a part only, of a contract which, in the cases above cited, has been refused recognition as basis for exemption. It is apparent that in this contract, as stated in *Old Colony Trust Co. et al., Executors, supra,* "the obligations of the company were such that the investment feature predominates and gives character to the contract."

That the revenue act distinguishes between policies involving mere investment and those entailing insurance is shown in *Helvering* v. *Illinois Life Insurance Co.,* 299 U. S. 88. Therein was considered "reserves required by law", as deductions, in part, from gross income under section 203 (a) (2) of the Revenue Act of 1928, and it was held that such reserves must directly pertain to life insurance, and do not include "survivorship investment funds" accumulated from premiums on 20-payment life policies, to be paid to surviving policyholders; and the Court stresses the fact that under the latter feature of the policy "the company's liabilities on account of the investment funds are independent of these attributable to life insurance risks." In other words, investment risks are not within the category of life insurance for the purpose of the revenue act, even though covered by a policy labeled one of insurance. Such a contract, involving survivorship investment funds, is *called* insurance, ordinarily known as tontine insurance. The Court relied upon its previous decision to the

same general effect in *Helvering* v. *Inter-Mountain Life Insurance Co.*, 294 U. S. 686. Commenting upon *Helvering* v. *Illinois Life Insurance Co.*, *supra*, Paul and Mertens, Law of Federal Income Taxation, § 36.11 (supplement) says: "A broad definition of the term *life* insurance was rejected by the Court in reversing the lower court * * *." Both cases are noticed by the Circuit Court in *Old Colony Trust Co. et al., Executors, supra*.

TURNER, MELLOTT, HILL, and OPPER agree with this dissent.