**In re John William STUTTERHEIM, Hazel Marion Stutterheim, Debtors.**

**Bankruptcy No. 87-40890-7.**

United States Bankruptcy Court, D. Kansas.

July 11, 1988.

William H. Stowell, Phillipsburg, Kan., James H. Dodson, Beaver City, Neb., for debtors.

Dale L. Somers, Patricia Hamilton, Eidson, Lewis, Porter & Haynes, Topeka, Kan., for First State Bank of Almena.

## ORDER GRANTING OBJECTION TO EXEMPTION

JAMES A. PUSATERI, Bankruptcy Judge.

This matter is before the Court on the objection of the First State Bank of Almena, Kansas to debtors' claimed exemption of a single premium deferred annuity contract. The debtors appear by William H. Stowell and James H. Dodson. The Bank appears by Dale Somers and Patricia Hamilton of Eidson, Lewis, Porter & Haynes.

By agreement of the parties this matter was submitted on the pleadings and briefs. The issues presented are:

1. Whether the Bank's objection is untimely.

2. Whether an annuity is an insurance policy.

3. Whether sanctions under Rule 11 should be imposed against the Bank for the filing of the objection.

## BACKGROUND

On June 9, 1987, debtor filed a voluntary petition for chapter 7 relief. In his Schedule B–4, debtor claimed as exempt under K.S.A. 40–414 an American Investors Annuity dated March 6, 1986 and valued at $4,500.00. The Section 341 hearing was set for July 13, 1987. The Bank did not appear. On January 26, 1988, the Bank filed the instant objection, asserting an annuity is not an insurance policy.

The contract in question is entitled "Single Premium Deferred Annuity Policy." It was executed on March 6, 1986 by debtor John Stutterheim and issuer American Investors Life. The single premium was in the amount of $5,000.00. The contract provides that upon a maturity date of March 6, 1991, the issuer shall pay to annuitant the total accumulated value of the policy during the life of the annuitant according to certain payment options, including monthly payments or payments for a fixed number of years. In no event do payments continue after the death of annuitant.[1]

The total accumulated value of the policy is defined in relevant part as the single premium accumulated at the declared interest rate. (the rate of interest through January 1988 was guaranteed at a 11%.). In the event the annuitant dies before the maturity date, the annuity pays a so-called "Death Benefit" equal to the total accumulated value. In no event does the death benefit exceed the amount of the premium plus accumulated interest.

## TIMELINESS OF OBJECTION

11 U.S.C. Section 522(*l*) provides:
the debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. If the debtor does not file such a list, a depend-

---

**1.** The only exception is if the joint and last survivor option is chosen, which provides for payment to the survivor for the life of the survivor only.

ent of the debtor may file such a list or may claim property as exempt from property of the estate on behalf of the debtor. Unless a party in interest objects, the property claimed as exempt on such list is exempt.

Bankruptcy Rule 4003(b) provides that the trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors or the filing of any amendment to the list unless, within such period, further time is granted by the Court. Bankruptcy Rule 4003(c) provides the burden of proof is upon the objecting party.

In this case, debtors contend that the Court should interpret Section 522(*l*) to effectuate its literal meaning; that so long as no one timely objects, whatever debtors claim exempt, no matter how far removed from the exemption statutes, should be deemed exempt. The Court does not agree.

 As the Bank points out, Section 522(*l*) presupposes that debtor has exempted legally allowable exemptions. This Court and the majority of courts thus construe Section 522(*l*) to permit untimely objections to exemptions where, *as a matter of law*, the debtors' claimed exempt property is not exempt. See *In Re: Rollins*, 63 B.R. 780, 784 (Bankr.E.D.Tenn.1986); *Matter of Dembs*, 757 F.2d 777, 780 (6th Cir. 1985); *In Re: Borth*, No. 83–1110 (Bankr. D.Kan. May 24, 1984) (Morton, J.). As a corollary of that principle, objections which raise questions of fact—such as whether the value of the tool of trade exceeds $7,500.00 or whether debtors principal occupation is farming—may not be raised untimely. See *In Re: McMannis*, No. 82–10776, Adv. No. 83–0052 (Bankr.D.Kan. July 20, 1983) (Pusateri, J.).

In this case it is clear that whether an annuity is an insurance policy is a question of law. Accordingly, the Court will consider the merits of the objection.

### INSURANCE POLICY

 K.S.A.1988 Supp. 40–414(a) provides:

If a life insurance company or fraternal benefit society issues any policy of insurance or beneficiary certificates upon the life of an individual and payable at the death of the insured, or in any given number of years, to any person or persons having an insurable interest in the life of the insured, the policy and its reserves, or their present value, shall inure to the sole and separate use and benefit of the beneficiaries named in the policy ...

This Court found no cases specifically construing the term "policy of insurance" as used in K.S.A. 40–414 and the parties cited none. As pointed out by the Bank, however, the term "insurance" has been judicially defined as "any contract whereby one party promises for a consideration to indemnify the other against certain risks." *State, ex rel., v. Anderson*, 195 Kan. 649, 662, 408 P.2d 864 (1965).

In this case, the Court believes that under any definition of insurance, the annuity contract at issue cannot be termed a policy of life insurance. First, the annuity contract does not appear to fall within the plain provisions of K.S.A. 40–414. The contract is not "payable at the death of the insured" and is not payable "to any person or persons having an insurable interest in the life of the insured", but is payable to the annuitant himself. The contract contains none of the provisions affording traditional coverage for the death of the insured, such as payment to the spouse or other dependents, and does not pay an amount sufficient to compensate defendants for the loss of the services and companionship of the insured and/or burial expenses. By contrast, the annuity contract is a simple investment vehicle that offers a guaranteed return of the investment. The term "death benefit" appears to have been added solely as a means to clothe the contract with the trappings of a true policy of insurance.

As this Court in dicta stated in *In Re: Barash*, 69 B.R. 231 (Bankr.D.Kan.1984) (Pusateri, J.), a creditor can make a valid objection to a debtor's claimed exemption

of an insurance policy where the policy is not shown to be a policy of insurance within the meaning of K.S.A. 40–414.

"This would be the case if the circumstances surrounding the purchase of the policies showed that the purchaser had no intent to provide for payment to his beneficiaries of sum certain, in the event of his untimely death, in return for moderate premium payments. For example, an endowment policy payable to the insured does not qualify as a policy of insurance, *In Re: Bray,* 8 F.Supp. 761, 763 (D.N.H.1934); nor do disability benefits payable to the insured, *Legg v. St. John,* 296 U.S. 489, 56 S.Ct. 336, 80 L.Ed. 345 (1936); also an annuity contract that pays periodically during the life of the annuitant or during a term fixed by contract with a death benefit representing a payment of the unpaid portion of the purchasers investment is not an insurance policy. *In Re: Howerton,* 21 B.R. 621 (Bankr.D.Tex.1982).

■ As a final matter, the parties make much ballyhoo over an old Kansas Supreme Court case and whether this Court is bound by any state court dicta in that case. The Court believes that only two points need be made. First, *Equitable Life Assurance Society v. Hobbs,* 154 Kan. 1, 114 P.2d 871 (1941) concerned only whether the term "premium" in a statute requiring companies to pay taxes on premiums included consideration received from annuity contracts. The court held that it did. In so reaching its holding, the Supreme Court stated:

"This is an original action in this court and it is duty and responsibility to find the facts. A majority of this Court concluded there is sufficient evidence to support the conclusion the instant contracts are contracts of insurance. The real question, however, is, What did the lawmakers intend by the use of the "premium"? If they intended thereby to include "considerations receivable for annuity contracts," then it becomes immaterial whether the instant contracts constitute insurance contracts or annuity contracts. In the opinion of a majority of this Court it is clear the lawmakers intended that "premium" should include "consideration for annuity contracts." In view of this conclusion it is unnecessary to prolong the opinion.

Such a statement is dicta, and federal law has traditionally provided that a federal court is bound to follow state court dicta. *Curtis Publishing Company v. Cassel,* 302 F.2d 132 (10th Cir.1962). However, that rule only applies where the dicta is "a clear and unequivocal exposition of law and does not conflict with other decision." *Id.* at 135. By contrast, as it applies to this case the statement in *Equitable* is neither clear nor unequivocal; the court expressly refused to hold the annuity contracts were contracts of insurance, and the court was only considering whether annuities are policies of insurance within the terms of the taxing statutes. Furthermore, there was a rigorous dissent in *Equitable* which casts doubt on whether the Supreme Court would reach the same decision today. Finally, as mentioned above, the dicta in *Equitable* would appear to conflict with the plain terms of K.S.A. 40–414. Accordingly, this Court is not bound by the dicta in *Equitable* and holds that as a matter of law the annuity contract in this case is not a policy of insurance within the meaning of K.S.A. 40–414.

## SANCTIONS

The parties go to great lengths to set forth the history of their relationship in the context of the bankruptcy proceeding and in the context of two dischargeability complaints that were filed by the Bank. However, the Court need not involve itself in the parties' disputes about the relative merits of their positions as set forth in other proceedings. Suffice it to say that whatever the Bank's motive, the objection in the instant matter was filed with support of the law. Accordingly, the Court concludes that no sanctions under Rule 9011 are warranted.

IT IS SO ORDERED.

In re John William **STUTTERHEIM** and Hazel Marion Stutterheim, Debtors.

John William **STUTTERHEIM** and Hazel Marion Stutterheim, Appellants,

v.

**FIRST STATE BANK, ALMENA, KS.,** Appellee.

No. 87–40890–7.

Bankruptcy No. 88–4192–R.

United States District Court, D. Kansas.

Nov. 22, 1989.

Motion for New Trial or Rehearing Denied Jan. 12, 1990.

William H. Stowell, Phillipsburg, Kan., James H. Dodson, Beaver City, Neb., for debtors.

Dale L. Somers, Patricia Hamilton, Eidson, Lewis, Porter & Haynes, Topeka Kan., for First State Bank of Almena.

MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a bankruptcy appeal. Appellants, John and Hazel Stutterheim, are the debtors in a Chapter 7 bankruptcy. They filed on June 9, 1987. On a B–4 Schedule, debtors listed as exempt an American Investors Annuity dated March 6, 1986 and valued at $4,500.00. The issue in this bankruptcy appeal is whether an objection to exempting the annuity should be upheld. The parties agree that this is a question of law. Therefore, the decision of the bankruptcy court, 109 B.R. 1006 is reviewed de novo. *In re Branding Iron Motel. Inc.,* 798 F.2d 396 (10th Cir.1986).

Under Bankruptcy Rule 4003(b), any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors. The meeting of creditors in this case was set for July 13, 1987. The appellee, The First State Bank of Almena, did not appear at the creditors' meeting. The Bank did not file an objection to the annuity as an exempt asset until January 26, 1988. Section 522(*l*) [small "L" not "one"] provides that: "Unless a party in interest objects, the property claimed as exempt on such list is exempt." The Sixth Circuit has interpreted Rule 4003(b) and Section 522(1) as follows:

> The clear import of the ... rule and of section 522(*l*) is that objections to claimed exemptions must be made within thirty days after the creditors' meeting or any amendment, or they are waived.... We do not mean by this to endorse "exemption by declaration"; there must be a good-faith statutory basis for exemption, and in that respect we fully approve *In re Bennett*, 36 B.R. 893, 895 (Bankr.W.D.Ky.1984). But where the validity of an exemption is uncertain under existing law, or where, ... it is the special character of the creditor that prevents the exemption, the creditor cannot rest on his rights in the face of Rule 4003(b).

*In re Dembs*, 757 F.2d 777, 780 (6th Cir. 1985).

In the case at bar, the bankruptcy judge held that an untimely objection to an exemption is permissible under 522(*l*) if the property is not exempt as a matter of law. Among other cases, the *Dembs* case was cited for this proposition. According to the bankruptcy judge, objections which raise questions of fact are waived if not timely filed. In this case, the bankruptcy judge found that only a legal issue was raised— i.e., whether the annuity is exempt under K.S.A. 40–414(a). Therefore, it did not matter to the bankruptcy court that the Bank's objection was untimely filed.

The bankruptcy court held that the annuity was not exempt under K.S.A. 40–414(a) because the annuity is not life insurance and K.S.A. 40–414(a) only makes life insurance exempt. K.S.A. 40–414(a) provides:

> (a) If a life insurance company or fraternal benefit society issues any policy of insurance or beneficiary certificates upon the life of an individual and payable at the death of the insured, or in any given number of years, to any person or persons having an insurable interest in the life of the insured, the policy and its reserves, or their present value, shall inure to the sole and separate use and benefit of the beneficiaries named in the policy and shall be free from:
>
> (1) The claims of the insured or the insured's creditors and representatives;
>
> (2) the claims of any policyholder or the policyholder's creditors and representatives, subject to the provisions of subsection (b);
>
> (3) all taxes, subject to the provisions of subsection (d); and
>
> (4) the claims and judgments of the creditors and representatives of any person named as beneficiary in the policy of insurance.

The bankruptcy court explained its ruling as follows:

> [T]he annuity contract does not appear to fall within the plain provisions of K.S.A. 40–414. The contract is not "payable at the death of the insured" and is not payable "to any person or persons having an insurable interest in the life of the insured," but is payable to the annuitant himself. The contract contains none of the provisions affording traditional coverage for the death of the insured, such as payment to the spouse or other dependents, and does not pay an amount sufficient to compensate defendants for the loss of the services and companionship of the insured and/or burial expenses. By contrast, the annuity contract is a simple investment vehicle that offers a guaranteed return of the investment. The term "death benefit" appears to have been added solely as a means to clothe the contract with the trappings of a true policy of insurance.
>
> The "death benefit" provided by the annuity was simply repayment of the single

premium plus accumulated interest in the event the annuitant died before the maturity date.

Appellants make three arguments on appeal: first, that the Bank waived any objection to the exemption of the annuity by failing to object within 30 days of the creditors' meeting; second, that the annuity qualifies as exempt property under the holding in *Equitable Life Assurance v. Hobbs*, 154 Kan. 1, 114 P.2d 871 (1941); and third, that there is at least a good faith statutory basis for exemption of annuity, and this is sufficient to overcome an untimely objection. This court rejects these arguments for the following reasons.

■ Read strictly, Rule 4003 and Section 522(*l*) support appellants' position concerning waiver. But, most courts have not followed appellants' interpretation of these provisions. Instead, most courts hold that an exemption must have an apparent legal basis for an exemption to overcome an untimely objection. *In re Frazier*, 104 B.R. 255, 257 (Bkrtcy.N.D.Cal.1989) ("There is virtually universal agreement that ... property [which could not be claimed as exempt as a matter of law] does not become exempt simply because no one files a timely objection."); *In re Hansen*, 101 B.R. 33 (Bkrtcy.N.D.Ind.1988); *In re Rollins*, 63 B.R. 780 (Bkrtcy.E.D.Tenn. 1986); *In re Bennett*, 36 B.R. 893 (Bkrtcy. W.D.Ky.1984); *In re Borth*, Case No. 83–11104 (Bkrtcy.D.Kan.1984). The reasons behind these holdings may differ slightly. For instance, in *Hansen*, the court made an analogy between a failure to object and an entry of default. Default is considered an admission of facts but not an admission of law. 101 B.R. at 35–36. Other courts have considered more practical reasons. As the court stated in *Bennett*:

> What we have chosen to call "exemption by declaration" is unacceptable for broader policy reasons. The obvious result of such a rule would be to encourage a debtor's claim that *all* of his property is exempt, leaving it to the bankruptcy trustee and creditors to successfully challenge that claim. We would revert to the law of the streets, with bare pos-

session constituting not nine, but ten, parts of the law; orderly administration of estates would be replaced by uncertainty and constant litigation if not outright anarchy.

36 B.R. at 895; see also, *In re Frazier*, *supra*, 104 B.R. at 259. Judge Morton reasoned in *Borth:* "[The] mandated procedural timetable does not create an exemption where none exists, nor may Section 522(*l*) be construed so as to arrive at such a result."

We are persuaded by the reasoning of the majority of courts on this issue. Therefore, we find that an objection to an exemption which is invalid under the law may be considered even if it is filed more than thirty days after the creditors' meeting.

■ Of course, under appellants' second argument, appellants assert that annuities *are* exempt under K.S.A. 40–414(a). This argument is based on *Equitable Life Assurance v. Hobbs*, 154 Kan. 1, 114 P.2d 871 (1941). There, the court held that "considerations for annuity contracts" were "premiums" for purposes of Kansas law regarding taxation of premiums received for insurance. The following language is found in the opinion:

> This is an original action in this court and it is our duty and responsibility to find the facts. *A majority of this court has concluded there is sufficient evidence to support the conclusion the instant [annuity] contracts are contracts of insurance.* The real question, however, is what did the lawmakers intend by the use of the word "premium." If they intended thereby to include "considerations received for annuity contracts," then it becomes immaterial whether the instant contracts constitute insurance contracts or annuity contracts. In the opinion of a majority of this court it is clear the lawmakers intended the word "premium" should include "considerations for annuity contracts." In view of this conclusion, it is unnecessary to prolong the opinion.

114 P.2d at 878 (emphasis added).

It is undisputed that Kansas law controls whether the annuity is exempt in this case.

The question is whether the *Hobbs* case controls the construction of K.S.A. 40–414(a). We do not believe the *Hobbs* case is controlling for the following reasons. First, in *Hobbs* the Kansas Supreme Court was not construing K.S.A. 40–414(a). Instead, the court was interpreting a taxation statute. Second, the court's holding is dicta since the court notes that the "real question" is not whether the annuity contracts are contracts of insurance. Federal courts are not bound to follow state court dicta unless such dicta is a clear and unequivocal exposition of law and does not conflict with other decisions. See *Curtis Publishing Company v. Cassel*, 302 F.2d 132, 135 (10th Cir.1962). We cannot consider the language in *Hobbs* "a clear and unequivocal exposition of law" concerning the interpretation of K.S.A. 40–414(a) when the Kansas Supreme Court was not addressing K.S.A. 40–414(a) in the opinion. Finally, the annuity does not provide the protection intended to be preserved by the statutory exemption for life insurance because it is not issued "upon the life of an individual" as required by the language of K.S.A. 40–414(a). For the above-stated reasons, we believe the bankruptcy judge was correct in holding that the annuity contract is not exempt.

Appellants' final argument is a good faith argument connected with the timeliness issue. Appellants contend that even if the annuity is not exempt as a matter of law under K.S.A. 40–414(a), there is a good faith statutory basis for finding an exemption, and this is sufficient under the *Dembs* case to require any objection to be made within 30 days or be waived. In *Dembs*, the Sixth Circuit stated that there must be "a good-faith statutory basis for exemption" under Rule 4003(b) and section 522(*l*); otherwise, an untimely, but valid, objection to the claimed exemption could be sustained.

The bankruptcy judge did not directly address this argument. But, it appears from the opinion that the bankruptcy court did not view the issue as one of good faith. The bankruptcy court held that objections based on legal issues can be made more than 30 days after the creditors' meeting, but objections based on fact issues must be asserted within the 30–day time period.

The appellees argue that good faith was not present in this case because prior to the time debtors filed their B–4 schedules, the bankruptcy court had indicated, in dicta, that an annuity would not enjoy the exemption given to life insurance policies. *In re Barash*, 69 B.R. 231, 233 (Bkrtcy.D.Kan. 1984).

It is difficult to determine what the Sixth Circuit meant in *Dembs* by the term "good faith statutory basis." The Sixth Circuit did not elaborate upon the term because it decided the case on totally different grounds. Thus, the discussion of the timeliness requirements of Rule 4003(b) and section 522(*l*) is dicta. It is notable that the Sixth Circuit states that it "fully approve[s]" the decision in *Bennett*, but the *Bennett* case never uses the term "good faith."

Under the facts of this case, the court prefers the approach of the bankruptcy court. As appellants admit, the main issue in this case is a question of law. Either there is a statutory basis for the exemption of annuities or there is not. Reading K.S.A. 40–414(a) as the bankruptcy court has, it should not matter if the objection by the Bank was filed beyond the 30 days provided for contesting a claimed exemption because, to reiterate Judge Morton's comment, "the mandated procedural timetable does not create an exemption where none exists ..." Nor should it matter whether the exemption was requested in good faith, if a statutory basis for the exemption is lacking. A persuasive policy reason for expanding statutory definitions of exempt property on the basis of a debtor's good faith in asserting the exemption is not apparent on the facts of this case.

The bankruptcy court's approval of the Bank's objection is affirmed. The Clerk is directed to transmit a copy of this order to the Clerk of the Bankruptcy Court.

IT IS SO ORDERED.

**In re Alberta Louise Schepp STUMPFF, Debtor.**

**Bankruptcy No. 89–70430.**

United States Bankruptcy Court,
E.D. Oklahoma.

Dec. 22, 1989.

John W. Swinford, Jr., Oklahoma City, Okl., for debtor.

Joseph H. Bocock and Victoria Hales, McAfee & Taft, Oklahoma City, Okl., for W.P. Spence, et al.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On December 19, 1989, a hearing was conducted pursuant to an Order entered by this Court on October 27, 1989. 107 B.R. 346. Appearances were entered at said hearing by John Swinford on behalf of the Debtor; Kenneth Mather, Chapter 7 Trustee; Dennis Caruso, the attorney for the Trustee; and Victoria Hales on behalf of the Spence group.

By virtue of a Stipulation and Order executed by the parties and this Court and entered December 19, 1989, the October 27, 1989 Order, which is subject to an appeal brought by the Debtor, is deemed interlocutory and not appropriate for appeal. As a result, this Court will restate its position on the issues which came before the Court for the October 27, 1989 Order in this, a final Order.

After review of the evidence presented at Trial, as well as the findings and conclusions formulated in the October 27, 1989 Order, this Court does hereby enter the following Findings of Fact and Conclusions of Law in this *final Order* in conformity with B.R. 7052, this being a core proceeding:

## STATEMENT OF ISSUES

As outlined in the prior Order of this Court, the following issues were previously set forth by this Court for briefing and resolution:

(1) Is a Widow's Allowance property of the bankruptcy estate?

(2) If a Widow's Allowance is property of the estate, is it exemptible and to what extent?

(3) What is the proper forum within which to seek a binding determination as to the need and reasonableness of this Widow's Allowance for the Debtor's temporary support with consideration being given to the income received by Debtor from the Katschor Trust?

(4) If the above issues are answered in the affirmative and jurisdiction lies with this Court, what is the proper level of the Widow's Allowance to be allowed as exempt in this bankruptcy estate which is reasonably necessary for the support of the Debtor.

## FINDINGS OF FACT

1. On January 20, 1989, a Petition for Probate of Will was filed by Alberta Stumpff, the Debtor herein, in Marshall County, Oklahoma to probate the Will of her husband, Phillip W. Stumpff, who died on December 17, 1988. Said Will provided for a bequeath to his surviving spouse (the Debtor) of their home, household goods, personal property contained in the home for personal use and one automobile. The remainder of the estate was bequeathed to his four surviving children.

2. On February 16, 1989, an Order Granting Widow's Allowance was entered in the probate case ordering the probate estate to pay the Debtor the sum of $7,140 per month, beginning on March 1, 1989 and continuing until further order of the Court. Said Widow's Allowance was created pursuant to the applicable Oklahoma Statutes and entered ex parte without an adjudication as to the reasonableness of the allowance granted to the Debtor.

The District Court in Marshall County, Oklahoma further entered an Order approving the sale of common stock in Brookside Manor, Inc. to the children of Phillip W. Stumpff as "was necessary to pay the allowance made to the surviving spouse, Alberta L. Stumpff." Notice of this sale was given only to heirs, devisees and legatees and by publication as required by law and not to creditors of the estate. The Court also appointed Alberta L. Stumpff, the Debtor herein, as Executrix in the probate action and entered Letters Testamentary accordingly.

3. On April 17, 1989, the Debtor filed a voluntary Petition seeking relief under Chapter 7 of the United States Bankruptcy Code. Within the Debtor's Schedules, the Debtor listed the Widow's Allowance in the amount of $85,680 as exempt pursuant to Oklahoma Statutes. This amount represented the $7,140 per month for a period of twelve months.

4. On October 16, 1989, the Debtor filed an Amendment to Schedules and Notice Thereof to which the Trustee has filed a Response reasserting his objection to the exemptions claimed therein. This Court shall consider all objections valid and ripe for resolution, despite said Amendment to the Schedules. The Widow's Allowance exemption has not changed in these Amendments.

5. At the hearing on December 19, 1989, the Plaintiff made an offer of proof stating that the Debtor's reasonable maintenance for normal living expenses is $3,040. This was the same amount presented to the Probate Court by the Debtor to obtain the ex parte order allowing the Widow's Allowance for normal living expenses. Neither the Trustee nor counsel for the Spence group offered any evidence in contradiction to this amount.

6. The Debtor further asserts that she is entitled to $4,100 to be included in the Widow's Allowance representing taxes for which the Debtor may be liable. The Trustee asserts that this determination is premature since the time for filing the appropriate tax returns has not occurred.

## CONCLUSIONS OF LAW

A. A Widow's Allowance such as is in dispute in this case, is created pursuant to the Oklahoma Statutes at Okla.Stat.Ann. tit. 58, § 314 (West 1965) which states, in pertinent part:

... The court may in its discretion make such reasonable allowance out of the estate as shall be necessary for the maintenance of the family, according to their circumstance during the progress of the settlement of the estate, which, in case of an insolvent estate, must not be longer than one year after granting Letters Testamentary, or of administration.

The case law interpreting this provision of the Oklahoma Statutes has set forth that this section is intended to "make a provision for the widow out of the deceased husband's estate until such time as the widow has in due course of law, received possession and use of her share of the estate so she may apply the same to her needs." *Barry v. Phillips*, 329 P.2d 1046 (Okl.1958); *Crane v. Howard*, 206 Okl. 447, 244 P.2d 559 (1952).

■ B. The first question this Court must address is whether the Widow's Allowance established pursuant to the Oklahoma Statutes is in fact property of this bankruptcy estate. We address this issue despite the fact that the Debtor included the Widow's Allowance in her claim for exemption, thereby implicitly including said allowance as property of the estate.

Generally, property of the estate consists of "... all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Certain property under this code section is excluded from the bankruptcy estate. Excluded property never enters the estate, and therefore is never transferred to the Trustee. The exclusions allowed under the U.S. Bankruptcy Code are found at 11 U.S.C. § 541(a)(6), (b)(1) and (2), and (c)(2). Section 541(a)(6) excludes "... earnings from services performed by an individual debtor after the commencement of the case." Since the Widow's Allowance is used for the maintenance of the widow during the pendency of the probate, we cannot find that these funds represent any compensation for services rendered.

The further exclusions included at 11 U.S.C. § 541(b)(1) and (2) and (c)(2) are equally as inapplicable to the facts and circumstances existing in the case at bar.

The Debtor further asserts that the payments post-Petition are excluded from the estate since they are paid after the commencement of the case. However, the right to these payments accrued pre-Petition in March of 1989 when the Probate Court entered its Order allowing the payment of a Widow's Allowance. Thus, we must find that the Debtor at least had an equitable interest if not a legal interest in the receipt of the Widow's Allowance funds at the commencement of the case.

The United States Bankruptcy Code at 11 U.S.C. § 541 in the subsections noted in the paragraphs hereinabove sets forth the sole provisions for an exclusion from the bankruptcy estate. Despite the Debtor's argument that the Widow's Allowance must be "sufficiently rooted" in the Bankruptcy past in order to be included in the estate, we disagree. Thus, we conclude that the Widow's Allowance is in fact property of this bankruptcy estate.

■ C. Since this Court has determined that the Widow's Allowance is to be included within the estate, the question of whether said allowance may be exempted from the estate arises. The Debtor relies upon the language contained within the Oklahoma Statutes at Okla.Stat.Ann. tit. 31, § 1A(19) (West Supp.1989) which states that "such person's right to receive alimony, *support*, separate maintenance or child support payments to the extent reasonably necessary for the support of such person and any dependents of such person" (emphasis added) is considered exempt. This

section appears to be aimed for the most part toward those rights to payments which are the incidents of a divorce proceeding rather than a probate proceeding. However, since this State lacks any legislative history to aid this Court in a determination of legislative intent, we must literally interpret this section and the word "support" contained therein as being inclusive of payments such as the Widow's Allowance to which the Debtor is entitled in this case. Thus, we conclude that the Debtor does possess the ability to exempt the Widow's Allowance pursuant to this section of the Oklahoma Statutes.

■■■ D. The above section which grants an exemption on payments necessary to support the Debtor clearly restricts said payments to the "extent reasonably necessary for the support" of the Debtor and dependents. In this case, the Debtor is the sole party benefiting from the Widow's Allowance. The question arises in this case as to which Court, the Probate Court which established the Widow's Allowance or this Bankruptcy Court governing property of this estate, has jurisdiction to determine the "reasonableness" of the Widow's Allowance. The Bankruptcy Court has exclusive jurisdiction over matters pertaining to property which may be exempted from the bankruptcy estate. *Goldsmith v. Jackman & Sons, Inc.*, 327 F.2d 184, 185 (10th Cir.1964). The United States Code itself empowers the Bankruptcy Court with the necessary jurisdiction to resolve disputes surrounding exemptions. 28 U.S.C. § 157(b)(2)(B). Further, the legislative history of the Bankruptcy Code provides that "after the property comes into the estate, then the debtor is permitted to exercise his exemptions, and the Court has jurisdiction to determine what property may be exempted and what remains as property of the estate." H.R.Rep. No. 95–595, 95th Cong., 2nd Sess. (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963.

Since the Debtor submitted herself to the Bankruptcy Court upon the filing of her voluntary Petition and thereunder attempted to assert an exemption of the Widow's Allowance, this Court clearly has jurisdiction over the extent and level of the Widow's Allowance to be claimed. Since the Debtor will receive the Widow's Allowance at the deference of the unsecured creditors of this estate, whom this Court is obligated to protect, it is essential that this Court is enabled to determine that which is reasonable under the Statute for the Debtor to receive.

■ E. We accept the definition proffered by counsel for W.P. Spence, et al. citing the case of *In re Taff*, 10 B.R. 101 (Bankr.D.Conn.1981) for the phrase "reasonably necessary for support." That case interpreted such language used under the Federal Bankruptcy exemption statutes. Such definition includes only "the property required to meet the present and anticipated needs of the individual and his dependents as determined by the Court after consideration of the individual's responsibilities and all the present and anticipated property and income of the individual, including that which is exempt." *In re Taff*, supra at p. 105–106.

Pursuant to the hearing conducted and the evidence presented, we find that the Debtor is entitled to payment of $3,040 per month as being reasonably necessary for the support of the Debtor, representing her living expenses.

We specifically reserve ruling on the issue as to whether the bankruptcy estate must pay any tax liability which may arise from these payments of the Widow's Allowance to the Debtor.

F. Since the prior Order entered October 27, 1989 is deemed interlocutory, the current appeal filed by the Debtor of the ruling in that Order appears to be inappropriate.

IT IS THEREFORE ORDERED that the Objections to Exemption filed by the various parties in this action are hereby **overruled**. The Widow's Allowance is hereby deemed property of this estate to which the Debtor is entitled to an exemption.

IT IS FURTHER ORDERED that the Debtor be paid a Widow's Allowance in the amount of $3,040 per month beginning in March, 1989 and continuing to date, with

appropriate credits being given to payments already made. The Trustee need not notice pursuant to B.R. 2002(a)(3) as for cause shown, we deem that notice is unnecessary.

IT IS FURTHER ORDERED that a ruling be reserved on the issue of tax liability until such time as that issue is ripe for consideration.

The parties shall monitor and present pleadings to this Court as are necessary to determine the amount and extent of the tax liability.

**In re Lawrence B. BURRIS, d/b/a # 96 Cattle Company, Burris–Dolan, Burris Farms and Burris–Goldsborough.**

**Bankruptcy No. 88–71006.**

United States Bankruptcy Court,
E.D. Oklahoma.

Jan. 2, 1990.

A. Camp Bonds, Jr., Muskogee, Okl., for debtor.

G. Blaine Schwabe, III, Oklahoma City, Okl., for Farm Credit Bank of Wichita.

### CORRECTION ORDER

JAMES E. RYAN, Bankruptcy Judge.

On this 2nd day of January, 1990, a Motion to Stay Pending Appeal filed by Farm Credit Bank of Wichita ("FCB") (Docket Entry No. 292) with a Response to the Motion filed by the Debtor (Docket Entry No. 306) and a Reply to the Response by FCB (Docket Entry No. 321) came before this Court for consideration.

Additionally, this Court reviewed its Order entered on October 24, 1989, 107 B.R. 342, with regard to the Debtor's Motion to Lease Property (Docket Entry # 277) and the Response to the Motion by FCB (Docket Entry # 284). Said review has resulted in a determination by this Court that the legal conclusions contained in the October 24, 1989 Order were incorrect and thus must be vacated. The proper reasoning and conclusions shall be entered in this Order to rectify the record in this case.

After review of the pleadings set forth hereinabove including this Court's Order of October 24, 1989, this Court does hereby enter the following findings and conclusions in conformity with B.R. 7052 in this core proceeding:

### STATEMENT OF ISSUE

At issue in this Correction Order is whether the Debtor may enter into an oil and gas lease on certain real property absent a subordination agreement from

FCB, considering the language in FCB's real estate mortgage.

## BACKGROUND

On October 24, 1989, this Court entered a Clarification of Order Entered August 3, 1989 resolving, among many other issues, a Motion to Lease filed by the Debtor. In that Motion, the Debtor sought an Order from this Court requiring FCB to subordinate its lien on the proceeds from the mineral estate in favor of a new lessee. In consideration of this subordination, the Debtor further requested that the Court grant to FCB a replacement lien against 100% of the bonus and royalty interests to be received under the lease until FCB has received the full value of its interest.

By virtue of the language contained in the mortgage given by the Debtor in favor of FCB (specifically set forth hereinbelow), this Court found in its prior Order that FCB encumbers the incidents of production from the mineral estate represented by "rents, royalties, bonuses and delay monies." As a result, we found that FCB implicitly through this language granted authority to the Debtor to enter into an oil and gas lease on the mineral estate without the necessity of a subordination agreement from FCB.

After subsequent research spurred by the Motion to Stay Pending Appeal filed by FCB, we have determined that this conclusion, though logical, is not supported by the law. In an effort to expedite matters with the least expense to the parties, FCB agreed to dismiss its appeal of the Clarification Order to enable this Court to correct that ruling. Said appeal was dismissed by Order of the United States District Court of the Eastern District of Oklahoma entered on December 20, 1989.

## FINDINGS OF FACT

1. Prior to 1979, the Debtor as owner of the fee estate of certain real property, entered into a mortgage with FCB. Among the provisions contained in said mortgage is found the term whereby "Mortgagor hereby transfers, assigns, sets over and conveys to Mortgagee all rents, royalties, bonuses and delay monies that may from time to time become due and payable under any oil and gas or other mineral lease of any kind now existing, or that may hereafter come into existence ..."

This provision effectively encumbers all incidents of production from the mineral estate.

2. The mortgage further states that "Mortgagor hereby covenants and agrees with Mortgagee as follows:

... (6) ... not to commit or suffer waste to be committed upon the premises; ..."

## CONCLUSIONS OF LAW

A. Under Oklahoma law, "where a mortgage provides by one clause that the mortgagor retaining possession 'shall not suffer waste,' by another clause provides 'as additional and collateral security' for assignment to the mortgagee of all royalties, revenues, and benefits under all oil, gas, or mineral leases in force or which may thereafter be placed upon the premises, and for payment of such revenues upon demand to such lessees, ... the mortgage is superior to an oil and gas or mineral lease executed after the date of the mortgage." *Breeding v. Ritterhoff*, 126 Okl. 225, 259 P. 227 (1927).

"Waste" is defined as "... whatever does lasting damage to the freehold or inheritance, and tends to the permanent loss of the owner in fee, or to destroy or lessen the value of the inheritance. Any act which tends to diminish the estate and cause a permanent loss to the owner of the fee constitutes waste." *Aldridge v. Houston Oil Company*, 116 Okl. 281, 244 P. 782 (1926). Although some Courts have determined that if a mortgage does not prohibit the mortgagor from entering into an oil and gas lease or the drilling for oil and gas, then such acts do not in fact "waste" and do not give rise to an action by the mortgagee. Rather, it is production which constitutes a "wasting" of the mineral estate and diminishes the security of the mortgagee. *Federal Land Bank v. Mulhern*, 180 La. 627, 157 So. 370 (1934). However, in Oklahoma, it would appear that the current

state of the law would prohibit even the entering into an oil and gas lease by the mortgagor absent a provision in the mortgage which reserves this right in the mortgagor. *Breeding v. Ritterhoff,* supra, 259 P. at p. 228.

In the case at bar, it is clear that the mortgage does not specifically reserve the right in the mortgagor to enter into an oil and gas lease, drill or achieve production from the mineral estate. Thus, any such production, although benefitting FCB since all incidents of production are paid directly to it, would constitute wasting and be prohibited under the mortgage and current law. As a result, a subordination agreement must be obtained from FCB prior to the Debtor entering into an oil and gas lease. Without such a subordination, the lease would be defeasible by the foreclosure of the mortgage by FCB. *Ball, et al. v. Coyle,* 108 Okl. 30, 233 P. 750 (1925).

B. Although the above clearly represents the state of the law, this Court finds that it must establish a procedure whereby all parties are afforded due process and yet the reorganization efforts of the Debtor are not thwarted.

Therefore, the following procedure shall be established for the future conduct of the Debtor and FCB with regard to oil and gas lease agreements proposed by the Debtor:

(1) If the Debtor desires to enter into an oil and gas lease with respect to property mortgaged to FCB, Debtor shall forward to FCB:

(a) a copy of the proposed lease fully executed by Debtor;

(b) a Subordination (of lien) Agreement for FCB to execute and return;

(c) a copy of a written offer to lease which identifies the intended lessee and the amount of bonus to be paid FCB upon receipt of the executed Subordination Agreement.

(2) Within ten (10) business days of receipt of the Subordination Agreement, FCB shall approve or deny such Agreement, by notifying the Debtor as follows:

(a) if such Agreement is approved, FCB shall return to the Debtor the proposed Subordination Agreement or prepare its own proposed Agreement to effect the recognized purpose. All lease bonuses, rentals, oil and/or gas proceeds representing the royalty interest and any other income or revenue derived from the lease shall be applied to Debtor's indebtedness to FCB according to the terms of the mortgage. FCB shall be the direct payee from the production purchaser after execution of a proper Division Order and account semiannually beginning six months after first payment to Debtor as to the production proceeds received.

(b) if such Agreement is denied approval, FCB shall notify Debtor that FCB refuses to subordinate its mortgage lien to such lease.

(3) If FCB refuses to subordinate its mortgage lien to a proposed oil and gas lease, or if FCB has not timely acted on a subordination request in accordance with the foregoing procedure, Debtor may seek an expedited hearing before this Court regarding approval of the proposed lease agreement. Debtor shall seek this hearing by filing a Motion to Approve Proposed Lease, setting forth the specific lease agreement at issue, the amount of any bonuses which have been offered by the proposed lessee, and a request for a hearing. FCB shall be allowed seven (7) days thereafter within which to respond to the Motion and the matter shall be set for hearing with at least five (5) days notice to FCB, the Debtor and the United States Trustee.

IT IS THEREFORE ORDERED that the portion of the Clarification Order entered October 24, 1989 relating to the Debtor's Motion to Lease, namely the fourth paragraph of the Statement of Facts and paragraph E of the Conclusions of Law as well as the ruling on this Motion, be vacated.

IT IS FURTHER ORDERED that the Motion to Lease Property filed by the Debtor is hereby denied.

IT IS FURTHER ORDERED that the Motion to Stay Pending Appeal filed by

FCB is rendered moot by the dismissal of the appeal.

IT IS FURTHER ORDERED that the parties adhere to the procedure established herein with regard to all future proposed oil and gas lease agreements.

■

**MIAMI CENTER LIMITED PARTNER-SHIP, et al., petitioners, v. Fred Stanton SMITH, etc., et al. No. 89–864.**

Supreme Court of the United States.

Case below, D.C., 93 B.R. 780; *Miami Center v. Bank of New York,* 881 F.2d 1086.

Petition for writ of certiorari to the United States Court of Appeals for the Eleventh Circuit.

Jan. 22, 1990. Denied.

**SUFFOLK COUNTY TREASURER, petitioner, v. James BARR, etc., et al. No. 89–900.**

Supreme Court of the United States.

Case below, *In re Parr Meadows Racing Ass'n, Inc.,* 92 B.R. 30; 880 F.2d 1540.

Petition for writ of certiorari to the United States Court of Appeals for the Second Circuit.

Jan. 22, 1990. Denied.

In The Matter of ZAGATA
FABRICATORS, INC.

v.

SUPERIOR AIR PRODUCTS,
Creditor, Appellant.

No. 89–5618.

United States Court of Appeals,
Third Circuit.

Argued Jan. 8, 1990.
Decided Jan. 12, 1990.

Ravin, Greenberg & Zackin, P.A., Roseland, N.J., Allan M. Harris (argued), of counsel for appellant, Superior Air Products, Inc.

Kathryn Ferguson, Michael A. Zindler (argued), Markowitz and Zindler, Lawrenceville, N.J., for Zagata Fabricators, Inc.

Before GIBBONS, Chief Judge, SCIRICA, Circuit Judge and WALDMAN, District Judge *.

## OPINION OF THE COURT

GIBBONS, Chief Judge:

Superior Air Products ("Superior") appeals a decision of the Bankruptcy Court of New Jersey, affirmed by the District Court, excusing Zagata Fabricators, Inc. ("Zagata") from its obligation to pay rent to Superior under a lease agreement entered into on December 15, 1984. Zagata signed this lease in order to take possession of real estate owned by Superior which had been the object of a contract of sale between Zagata and Superior. Execution of the contract was prevented, however, by a state law requiring Superior to clean up industrial pollutants that had been discov-

---

* Hon. Jay C. Waldman, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.